# Richmond

## I. KANTER V. COMMONWEALTH OF VIRGINIA.

November 21, 1938.

Record No. 2024.

Present, All the Justices.

The opinion states the case.

*J. L. Broudy* and *Tazewell Taylor*, for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Plaintiff in error was tried and convicted upon an indictment charging him with grand larceny. His punishment was fixed by the jury at confinement in the penitentiary for a period of one year.

The motion to set aside the verdict of the jury was overruled by the trial court, and judgment was thereupon pronounced according to the verdict.

The relevant section of the Code is section 4448, which provides:

"If any person buy or receive from another person, or aid in concealing any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted."

The evidence of the Commonwealth was to the effect that accused, a junk dealer in the city of Norfolk, had purchased from one William Ross, with knowledge that it had been stolen, fifteen hundred pounds of type metal, the property of Norfolk Newspapers, Incorporated, and of the value of $168.00.

Accused admitted the purchase of the type metal from Ross, but denied that he had any knowledge that it had been stolen.

The further evidence introduced by accused was to the effect that he had been engaged in the purchase and sale of junk in the city of Norfolk for a period of five years; that he bore a good reputation for truth and honesty; that he had no previous criminal record; that for a considerable time he had purchased waste paper from one Mizroch, a local dealer; that the type metal in question had been delivered by Ross, and payment made to Ross, whom he thought to be in the employ of Mizroch; that the purchase from Ross had been duly reported to the police department as required by city ordinance; that this metal was sold to a dealer in the city of Richmond, but was later repossessed and delivered to the police department of Norfolk.

The report filed by defendant is as follows:

"Daily Report of NATIONAL PAPER & STOCK CO., Junk Dealers, I. Kanter, Proprietor DATE 9–23, 1937.

| | Article | Bought from. | | | | Address |
|---|---|---|---|---|---|---|
| Amount | Description | Name | Age | Color | Height | |
| 15 lb<br>20 " | Coper old<br>Bres Screp | Jessee J. Beals | 21 | W | 5–6 | 2209 ohio ave |
| 915 lb | Type metal | Wilim Ross | 21 | C | 5–6 | 514 church St |
| 2 | Batres | Jones Smith | 18 | C | 5–6 | 1725 church St |
| | | | | | | I. KANTER |

Signed National Paper & Stock Company, Junk Dealers at 737 Cecelia Ave."

The following appears at the bottom of the report:
"Section 3937a, Code of Virginia: Every junk dealer doing Business, in any city or town, shall every day (except Sunday) before eleven o'clock in the forenoon deliver to the Chief of Police of such city or town on a blank form to be prescribed by such Chief of Police a legible and correct transcript from his books of all his transactions of the day previous. If any junk dealer has in his possession any

article which is proved to have been stolen, the purchase of which he has not recorded in the books he is required to keep. for that purpose he shall be deemed guilty of the larceny thereof."

During the progress of the trial the attorney for the Commonwealth offered in evidence the report filed by the defendant.

Counsel for defendant did not object to the introduction of the report made by defendant, but when the attorney for the Commonwealth began to read to the jury' the purported statute subjoined to the report, counsel objected, on the ground that section 3937a had been repealed. The court overruled the objection, and the alleged obnoxious language was read to the jury. Later in the trial a motion was made by counsel for a mistrial, on the ground that the sheet introduced by the Commonwealth has printed thereon the language above set forth.

In the absence of the jury, the court said:

"The Court is of opinion that the paper is admissible in evidence as showing knowledge or tending to show knowledge on the part of the accused. The motion is overruled. The Court is further of the opinion that the statement at the bottom is not introduced as the correct statement of the law but is simply on the question of what knowledge the accused may have had of the character of the transaction in which he was involved."

Thereupon, this colloquy took place:

"Mr. Broudy: We move that that portion of the paper which has that statement on it be cut off of that sheet and withdrawn from the consideration of the Jury when it retires to its room, and the Jury be not permitted to read it.

"The Court: The Court overrules the motion and will cover the proposition by appropriate instructions if asked so to do.

"Mr. Broudy: We renew our motion for a mistrial because of the Court's action, and we want to take an exception in both instances."

The action of the court in overruling the motion to discharge the jury and grant a new trial is assigned as error.

■ To state that an accused is entitled to a fair and impartial trial is but to restate a fundamental principle which has become a canon of the law, fortified by statutory and constitutional provisions.

■ Had the trial court, pursuant to its announced view that obnoxious language referred to as section 3937a was not a correct statement of the law, of its own motion instructed the jury merely on the question of guilty knowledge, that might have sufficed; but where there was no question as to the possession of stolen property by the defendant, to submit to the jury an invalid statute which made it mandatory upon the jury to find the defendant guilty, whether or not the stolen property had been innocently acquired, constitutes reversible error. Especially is this true when it is observed that the objectionable language is merely appended to and does not form a part of the report signed by the defendant.

■ The language of the repealed statute, "If any junk dealer has in his possession any article which is proved to have been stolen, the purchase of which he has not recorded in the book he is required to keep for that purpose he shall be deemed guilty of the larceny thereof" (Code 1904, section 3937a), is in direct conflict with section 4448, *supra*. The latter statute upon which the prosecution is based, makes a conviction dependent upon guilty knowledge. In other words, before a conviction based upon section 4448 is legal, the Commonwealth must show beyond a reasonable doubt that the accused received from another person "any stolen goods or other thing, knowing the same to have been stolen."

■ The statement of the trial court, that it would define by appropriate instructions the ground upon which the objectionable language was submitted to the jury "if asked so to do," placed upon the defendant the burden of correcting an error committed by the court. Clothed with the presumption of innocence from the beginning of his trial

to the end thereof, it was not incumbent upon the defendant to assume such a burden.

The second assignment of error is:

"The Court was in error in failing to order a mistrial on the ground of misconduct on the part of the Commonwealth's Attorney in questioning D. A. Tavss, the character witness for the defense, by propounding to him the following question, with the following answers:

"Q. Did you ever hear of his (meaning thereby Kanter's) buying copper wire that was stolen from the Coast Guard Station at Virginia Beach?

"A. I did not."

The witness Tavss upon his examination in chief had testified to a life-long acquaintance with the defendant; that he knew his general reputation for truthfulness and honesty, and that it was very good.

The above question was propounded to the witness by the attorney for the Commonwealth and answered in the negative. No effort was made by the attorney for the Commonwealth to show that defendant had in fact bought copper wire that was stolen from the Coast Guard Station, or that there was a general rumor or report to that effect; nor was there any evidence introduced by the Commonwealth that the general reputation of the defendant for honesty was bad.

When it became apparent that whatever implication attached to the question was to be left to the jury without explanation, counsel for defendant moved the court, without avail, to discharge the jury.

It must be conceded that the general rule is, that the representative of the Commonwealth is afforded a wide range in his cross-examination of a witness who has testified to the good reputation of a defendant, but that range must be confined within the limits of good faith and fair dealing and must be based upon facts, general rumor or report.

In 71 A. L. R. page 1504, the rule is thus stated:

"According to the overwhelming weight of authority, a witness testifying to the good reputation or character of a defendant in a criminal prosecution may be interrogated on cross-examination with respect to rumors or reports of particular acts imputed to the defendant, and as to what the witness has heard of specific charges of misconduct made against the defendant."

In *State* v. *Dixon* (Mo. Sup.), 190 S. W. 290, 293, this is said:

"While we recognize the great latitude permitted in cross examination in order to test the memory and truthfulness of witnesses offered to prove the good reputation, we yet think that the matters inquired about in such a cross examination should not be merely chimerical, or drawn from the vivid imagination of opposing counsel, or manufactured at the instant for the purpose of producing an erroneous impression, but they ought to have reference to some actual criminality, or breach of the peace, or ill conduct of the party inquired about which would go to hurt reputation."

In *State* v. *Jones,* 48 Mont. 505, 139 P. 441, 445, it was held reversible error to ask upon cross-examination, a character witness for the defendant who had testified to his good reputation for peace in a homicide case, this question:

"Did you ever hear about the episode at the Castle when he went up there to beat up a woman?" In the opinion it is said:

"The question as put by counsel assumed as a fact that the defendant did go to the Castle for the purpose stated. Though the statement was in the form of an interrogatory, it was as objectionable as if it had been stated in the form of a declaratory sentence, and therefore was obnoxious to the rule against proof of particular facts. The situation was not aided by the negative answer of the witness. The answer did not negative the fact stated, but only that the witness had not heard of the fact. If he had answered in the affirmative, the answer would have implied the existence of the fact as well as hearsay knowledge of it by the witness. If it had not been answered at all, it was still objectionable,

for it was calculated to leave the jury under the impression that the episode did occur, and hence to furnish them some basis for the damaging inference that the defendant was a lawless character."

To the same effect, see 2 Wigmore on Evidence, section 988.

It is no doubt true that the attorney for the Common-wealth was without ulterior motive in asking the question, but the fact remains that the question propounded was not based upon general rumor or report, but upon the implied fact that defendant did buy copper wire that was stolen from the Coast Guard Station at Virginia Beach.

In the brief filed on behalf of the Commonwealth it is said:

"We agree that, both on principle and under the au-thorities * * * the use of this type of cross-examination should be limited to *bona fide* inquiries into the source and accuracy of the character witness' information," and it is suggested that "if counsel question the Commonwealth's Attorney's good faith they should object to the question, and ask the court, in the jury's absence, to require of the prosecution that it show credible evidence of the alleged rumors or reports."

We are unwilling to concur in this contention. The fact that the question involved is one of first impression is a fine tribute to the attorneys for the Commonwealth. The good faith of the attorney for the Commonwealth should be assumed (as was done in this case), for the very apparent reason given in *Wilson* v. *Commonwealth,* 157 Va. 962, 968, 162 S. E. 15, that the duty of the representative of the Commonwealth to prosecute one accused of crime is co-existent with his duty to see that the accused is accorded a fair and impartial trial.

The assignment of error is well founded.

There are other assignments of error dealing with the giving and refusing of certain instructions.

As the case will have to be remanded for a new trial, in accordance with the views herein expressed, and as the evi-

dence may be different upon the second trial, we do not deem it necessary to discuss the instructions given and refused in the instant case.

*Reversed.*

GREGORY, J., dissenting.

The accused is a junk dealer in Norfolk, and he received more than 5,000 pounds of newspaper type metal from two negroes during a period extending from September to the middle of November. This metal had been recently stolen from the Norfolk Newspapers, Incorporated. The greater part of it was still in sheets that corresponded to the sheets of the newspapers. He reported to the police department that he had received 915 pounds of the metal, but he made no report of the receipt of the residue.

Newspaper type metal is never sold as junk. It is melted over and over again and used. When it begins to lose its value as metal from melting it too often, other new metal is added and in this manner it continues to be useful.

The accused tried to explain his possession of the stolen metal. His testimony is weak and unreasonable. The great weight of the evidence points to his guilt. He does not claim that the evidence is insufficient to support the verdict, but relies only upon alleged errors of law committed during the trial, two of which the majority of the court deems sufficient to justify a reversal of the judgment.

It is inconceivable that the accused could have received over 5,000 pounds of newspaper type metal in a comparatively short time from the two negroes and under the circumstances detailed in the evidence, without knowing that it had been recently stolen. Under the evidence it would be difficult, indeed, for any twelve men to acquit him. It is highly improbable that any reasonable man could fairly conclude that he was innocent. With the weight of the evidence pointing to the guilt of the accused, and in view of the verdict of the jury and the judgment of the court, I do not think we should reverse the judgment on the alleged

erroneous admission of certain evidence. Especially is this true when it is not shown clearly that Rule 22 of this court has been complied with.

The accused has not shown that he was prejudiced by the evidence improperly admitted. He must show more than the admission of improper evidence. He must show that his substantial rights have been invaded and that he has been injuriously affected thereby. The fact that he was not prejudiced by the admission of the evidence is reflected in the verdict which fixed his punishment at the minimum prescribed by the statute.

If the improper evidence had been excluded it is quite likely the result would have been the same, for no other proper verdict could have been rendered under the evidence. See Code, section 6331.

For these reasons I am unable to concur in the opinion of the majority.

EGGLESTON, J., concurs in this dissent.