**Alexandria**

STEPHEN PHILLIP WEIMER

v.

COMMONWEALTH OF VIRGINIA

No. 0154-86

Decided September 15, 1987

48

COUNSEL

Mark D. Cummings (David E. Sher, John J. Gallagher; Sher and Cummings, on brief), for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLE, J.** — Stephen Phillip Weimer was convicted in a jury trial of aggravated sexual battery. The court imposed a sentence of three years as recommended by the jury. We awarded this appeal upon the following issue: whether the court erred in allowing the Commonwealth to cross-examine the defendant's character witness concerning her knowledge of a prior specific instance of al-

leged misconduct which was not the subject of a criminal complaint or general rumor. Finding error, we reverse.

On June 17, 1985, the Arlington County grand jury returned four indictments charging Weimer with (1) breaking and entering with intent to commit rape; (2) rape; (3) sodomy; and (4) aggravated sexual battery. Weimer was acquitted on the first three charges, but convicted upon the charge of aggravated sexual battery.

At the time of the alleged offenses, Weimer had been separated from his wife, Marcie Weimer, for approximately two and a half years. He had an eleven year old daughter and no criminal history or arrest record. On the third day of trial, Weimer called his wife as a character witness. Without objection, she testified that Weimer's reputation in the community for truth and veracity was very good. When asked what his reputation for peace and good order was, she responded that "Stephen is the most peaceful person I have probably ever known," and "I have never known him to be involved in any kind of violence whatsoever."

On cross-examination, Mrs. Weimer was asked the following question by the Commonwealth's attorney: "Mrs. Weimer, are you aware of the fact that in 1978 your husband was the subject of a complaint of sexual battery of a seventeen year old . . . ." At this point defense counsel interrupted and objected on the ground that the question was not founded upon fact, and stemmed from the imagination of the Commonwealth's attorney. Thereafter the following colloquy occurred between the court and counsel:

DEFENSE COUNSEL: Objection, objection, cheap shot, that is a cheap shot with no good faith basis for asking that question. That is an unfounded question and stems from his imagination. If we can approach the Bench on this?

THE COURT: When you put a character of a person in issue as you have done in this case and also that person's reputation for peace and good order you provide the base for entry of evidence that would relate to the commission of other possible offenses. Objection overruled.

DEFENSE COUNSEL: Other possible offenses? Even if they are completely trumped up?

THE COURT: Let me hear the question.

\* \* \*

DEFENSE COUNSEL: I have witnesses who contradict that. He is opening the door to his own funeral.

THE COURT: You opened the door by introducing evidence of his good character which puts it in issue.

DEFENSE COUNSEL: Fine, let him go to it.

THE COURT: I don't see any question about it. He can go into it when you put his character at issue.

DEFENSE COUNSEL: Go to it.

THE COURT: It is a much narrower area of inquiry.

PROSECUTOR: May I proceed, Your Honor?

THE COURT: Yes.

BY PROSECUTOR:

Q. Are you aware that your husband, in 1978, was the subject of a complaint of a sexual battery of a seventeen year old Wakefield student pursuant to his professional duties as a fireman and paramedic? Are you aware of that?

A. In 1978?

Q. Yes, ma'am.

A. No, I am not.

Q. Would that change your opinion?

A. Absolutely not.

The appellant contends that the prosecution's cross-examination of Marcie Griffin Weimer violates the criteria set forth in *Kanter v. Commonwealth,* 171 Va. 524, 199 S.E. 477 (1938). He specifically complains that the prior complaint was not a general rumor

in the community, and that the prosecutor knew that the witness was unaware of the complaint when he asked the question. He claims that this questioning violates the rule which forbids proof of prior specific instances of misconduct and since the Commonwealth failed to disclose a factual basis for the question, it constitutes reversible error.

The Commonwealth defends by contending that Weimer waived his objection to admissibility of the complaint when he advised the trial court to "Go to it." It further alleges that the defendant opened the door to the Commonwealth's line of questioning by not moving to strike the answer of the witness, which was unresponsive to a question asked on direct examination.

In order to acquire a proper perspective of this case, a statement of some general principles is required. A person on trial for a criminal offense has the right to introduce evidence of his reputation for pertinent character traits on the theory that it is improbable that a person who has a good reputation for such traits would be likely to commit the crime charged against him. On the other hand, the Commonwealth may not introduce testimony of the bad reputation of the accused until the accused has put the pertinent traits of his character in issue. *Zirkle v. Commonwealth*, 189 Va. 862, 871, 55 S.E.2d 24, 29 (1949); *see also Byrdsong v. Commonwealth*, 2 Va. App. 400, 402, 345 S.E.2d 528, 530 (1986).

Once the defendant introduces evidence of good character to show he is not guilty of the offense charged, his character witnesses may be cross-examined by the prosecutor and the prosecution may introduce direct reputation testimony relating to the defendant's character.

> Both the accused and the Commonwealth are allowed wide latitude on cross-examination of character witnesses. However, the purpose of such cross-examination is to ascertain whether the witness in fact knows the reputation of the accused, and to test the estimate or standard of the witness, as to what constitutes good character.

*Zirkle*, 189 Va. at 872, 55 S.E.2d at 30 (citations omitted).

██ One method generally recognized to impeach the character of a witness is to establish that his reputation for truth and veracity in the community where he lives is bad. *Bradley v. Commonwealth*, 196 Va. 1126, 1133, 86 S.E.2d 828, 832 (1955). The testimony of an impeaching witness must be confined to the general reputation of the witness for truth and veracity and he is not permitted to testify as to the specific acts of untruthfulness or other bad conduct, though they may have a bearing on veracity. *Clark v. Commonwealth*, 202 Va. 787, 789-90, 120 S.E.2d 270, 272 (1961) (citations omitted). The law is well settled "that the character of a witness for veracity cannot be impeached by proof of a prior conviction of crime unless the crime be a felony, or one which involved moral turpitude or the character of the witness for veracity." *Id.* at 790, 120 S.E.2d at 272 (quoting *McLane v. Commonwealth*, 202 Va. 197, 203, 116 S.E.2d 274, 279-80 (1960)).

> When the testimony of a witness establishes the good character of an accused, the prosecutor may ask the witness whether he has heard of certain specified instances of misconduct by the accused. The purpose of this evidence is not to prove the specific instances of misconduct as a fact to show guilt, but rather to determine the grounds of the knowledge of the witness.

*See* 3A *Wigmore on Evidence* § 988 (Chadbourn ed. rev. 1970).

██ Although the Commonwealth's attorney has a wide range of discretion in his cross-examination of a witness who has testified to the good reputation of a defendant, that range must be confined within the limits of good faith and fair dealings, and must be based upon facts, general rumor or report. *Kanter*, 171 Va. at 530, 199 S.E. at 480.

> [T]he matters inquired about in such a cross-examination should not be merely chimerical, or drawn from the vivid imagination of opposing counsel, or manufactured at the instant for the purpose of producing an erroneous impression, but they ought to have reference to some actual criminality, or breach of the peace, or ill conduct of the party inquired about which would go to hurt reputation.

*Id.* at 531, 199 S.E.2d at 480 (quoting *State v. Dixon*, 190 S.W. 290, 293 (Mo. 1916)). In *Kanter*, the court noted that it was error

to ask a question calculated to leave the jury under the impression that the damaging incident referred to in the question did occur. The court explained that such a question was error even if it was unanswered or answered in the negative. *Id.* at 531, 199 S.E. at 481.

The character evidence rules have been criticized by textbook writers and in numerous court decisions. When the accused elects to place his character in issue he may call witnesses to give hearsay evidence. Indeed, such witnesses are not permitted to testify about anything except hearsay. They may not testify that their own observation and knowledge leads them to believe that the defendant is a person of good reputation. They are permitted to summarize what they have heard in their community. In an effort to rebut this hearsay evidence, the prosecutor is permitted to put on further hearsay evidence. *Michelson v. United States*, 335 U.S. 469, 477-79 (1948). This practice places a heavy burden upon defense counsel and the prosecutor to be fundamentally fair. In *Michelson*, the Supreme Court stated:

> To thus digress from evidence as to the offense to hear a contest as to the standing of the accused, at its best opens a tricky line of inquiry as to a shapeless and elusive subject matter. At its worst it opens a veritable Pandora's box of irresponsible gossip, innuendo, and smear.

*Id.* at 480.

■ To aid the trial court in determining whether the cross-examination is proper, we adopt the criteria established in *State v. Steensen*, 35 N.J. Super. 103, 113 A.2d 203 (1955), holding that the trial judge should conduct a preliminary inquiry out of the presence of the jury in order to satisfy himself:

> 1. that there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;

> 2. that a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;

3. that neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;

4. that the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and

5. that the examination will be conducted in the proper form, that is: "Have you heard," etc., not "Do you know," etc.

And if the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose.

*Id.* at ___, 113 A.2d at 206 (citations omitted).

When Mrs. Weimer was asked by the Commonwealth's attorney whether she was aware of the 1978 complaint of sexual battery of a seventeen year old, the record is confusing because neither Mrs. Weimer nor defense counsel had any knowledge of a 1978 complaint of a sexual battery. Defense counsel did know of a 1983 complaint and he confused these two events, thinking that there was only one complaint and that the Commonwealth's attorney had confused the dates. He objected to the question, knowing that Weimer had been completely exonerated of the 1983 incident. He informed the court that this was not a good faith question but one that stemmed from the imagination of the Commonwealth's attorney. He requested permission to approach the bench to further explain. This was not permitted and the trial court overruled the objection, stating: "[W]hen you put a [sic] character of a person in issue as you have done in this case and also that person's reputation for peace and good order you provide the base for entry of evidence that would relate to the commission of other possible offenses."

Upon his belief that the 1983 complaint was the subject of discussion, and not a 1978 incident, defense counsel advised the court that he had witnesses who would refute the complaint and stated: "[H]e is opening the door to his own funeral." The trial judge then ruled that he saw no debatable question and that the Commonwealth could go into it because the accused had put his character in issue. It was in this context that defense counsel then re-

marked, "Go to it."

The question was rephrased by the Commonwealth's attorney:

QUESTION: Are you aware that your husband, in 1978, was the subject of a complaint of a sexual battery of a seventeen year old Wakefield student pursuant to his professional duties as a fireman and paramedic? Are you aware of that?

The witness testified that she was not aware of the complaint. At the completion of the cross-examination, defense counsel advised the court that he did not know what the Commonwealth's attorney was talking about and requested "a proffer about what we are dealing with." The Commonwealth's attorney advised the court that Commonwealth was entitled to rebuttal testimony and that "[i]t will be brought up at that time." Accordingly, the trial court refused to require a proffer of the evidence concerning the complaint. On rebuttal, the Commonwealth did not put on any evidence to prove that such a complaint was in existence.

The Commonwealth contends that several weeks after trial the prosecutor filed an affidavit of Detective Sgt. K. J. Madden setting forth the basis for the particular line of questioning, and claims that the affidavit was made a part of the record. The trial judge did not have the affidavit when he made his rulings. Defense counsel did not have an opportunity to cross-examine Madden concerning the affidavit. Also, the affidavit is not a part of the record and we cannot consider it on appeal.[1]

The main thrust of the Commonwealth's argument is that the defense attorney for tactical reasons waived any objection when he stated to the court "Go to it," and "I have witnesses who contradict that. He is opening the door to his own funeral." The Commonwealth's argument is not based upon the contemporaneous ob-

---

[1] The affidavit, if considered, would not benefit the Commonwealth. It disclosed that a witness had come forward for the first time during the second day of the trial (October 9, 1985) and advised the detective of an event that occurred seven years previously. In her statement, the witness stated that this event had not been disclosed to anyone prior to her testimony before the police officer. Therefore, it could not have been known to Mrs. Weimer or the community, a fact of which the prosecutor was well aware when he propounded the question to Mrs. Weimer.

jection rule, but upon the proposition that defense counsel led the trial court to believe that the objection to the admissibility of the evidence had been affirmatively waived. However, a review of this record discloses that the Commonwealth's attorney and defense counsel at that time had in mind two different events. Any misunderstanding which was present in the beginning of the colloquy was dispelled later when Weimer's counsel stated that he did not know what the Commonwealth's attorney was talking about and asked for a proffer of the evidence of the complaint.

■ Defense counsel must object to the admissibility of evidence in a timely manner. However, on occasion the proper objection may not be obvious, as in this case where the prosecutor and defense counsel had in mind different events; under such circumstances the objection can be made as soon as the dangerous drift of the examination becomes apparent. *Whitten v. McClelland*, 137 Va. 726, 743, 120 S.E. 146, 151 (1923); *see also* C. Friend, *The Law of Evidence in Virginia* § 73 (2d ed. 1983). We hold that under the facts and circumstances of this case defense counsel did not waive his objection to the question propounded by the Commonwealth's attorney, which was improper without a foundation upon which to base it. A foundation was promised by the Commonwealth's attorney but not produced.

■ However, when it affirmatively appears that the error of the trial court could not affect the merits of the case, the appellate court will not reverse the judgment of the trial court. *Speller v. Commonwealth*, 2 Va. App. 437, 443, 345 S.E.2d 542, 546 (1986).

Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (citations omitted).

The effect of the question propounded by the Commonwealth's attorney to Mrs. Weimer was to place before the jury a specific act of misconduct of the accused which had no bearing upon his general reputation in the community. The record does not establish that the question was based upon fact, general rumor or report, but left with the jury the clear impression that the defendant in the past committed a sexual battery upon a seventeen year old female. Placing this type of evidence before a jury could be devastating to a defendant. This conclusion is suggested by the results of this case where, upon conflicting evidence, the defendant was convicted of aggravated sexual battery, but acquitted of rape, breaking and entering with intent to commit rape, and sodomy. We cannot say that the error was harmless beyond a reasonable doubt. We therefore reverse the conviction and remand for a new trial.

*Reversed and remanded.*

Duff, J., and Keenan, J., concurred.