386 S.E.2d 807 (1989)
Mayfield B. HOPE, a/k/a Daryl David Harris,
v.
COMMONWEALTH of Virginia.
Record No. 1195-87-2.
Court of Appeals of Virginia.
August 1, 1989.
Rehearing En Banc Granted September 15, 1989.
Milton E. Maddox (Wells & Paris, on brief), for appellant.
Birdie H. Jamison, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Before BAKER, BENTON and COLE, JJ.
JOSEPH E. BAKER, Judge.
In this appeal from a judgment of the Circuit Court of Henrico County (trial court) which approved jury convictions for breaking and entering (statutory burglary) and grand larceny, Mayfield B. Hope (appellant) *808 alleges first, that the evidence was insufficient to establish his guilt beyond a reasonable doubt on either charge, and second, that the trial court erroneously permitted the Commonwealth to introduce into evidence a gun found at the scene of his apprehension.
The uncontradicted evidence is that at approximately 3:00 a.m. on April 30, 1987, the Henrico police responded to an activated burglar alarm at Eastgate Mall where, upon their arrival, they discovered that someone had broken into the mall through a skylight. Entry into Morton's Jewelry (Morton's) store, located inside the mall, had been gained by smashing the entrance door. Eighteen thousand dollars worth of watches and chains was stolen by smashing the glass cases which had displayed them. On the same day, approximately five hours later, Henrico County Investigator Williams received a call from an informant advising him that two black males, one of whom was named May field (appellant's first name), were offering some stolen jewelry for sale and could be reached by calling a beeper number, leaving a number for call-back, and adding two zeros at the end of this number for code purposes. After checking with his police department and learning the details of the theft from Morton's, at approximately 6:00 p.m. Williams called the beeper number and left his phone number and the code. Within two or three minutes a male who gave his name as "Hensley" returned the call and told Williams that "Hensley," driving a gray Monte Carlo, would meet him in the parking lot of the Azalea Mall at 8:30 p.m. that same night. Special police forces were placed at the Azalea Mall to intercept "Hensley" after the purchase was made, as well as to act as a "back-up" for Williams. Williams made contact with "Hensley," who drove up in a Monte Carlo with appellant seated in the passenger seat. Williams had been given $2,100 by police officials to make the buy, all of which had been photostated for identification purposes before he received it. When "Hensley" approached Williams' car Williams told "Hensley" he would deal only with one of them. "Hensley" directed appellant to drive the Monte Carlo behind Williams' car and wait. "Hensley" then went to the Monte Carlo, reached down toward the floorboard, picked up a blue-gray sports bag which contained the stolen watches and brought it to Williams, where they negotiated a sale of seventy-nine watches for $2,000. Among the watches purchased were Nicolet watches, which were sold exclusively by Morton's. When the sale was consummated "Hensley" returned to his car and Williams drove off, giving a prearranged signal to the waiting police who then closed in on the Monte Carlo. Seeing the police cars, appellant and "Hensley" abandoned their vehicle and attempted on foot to evade the police. An examination of the abandoned Monte Carlo revealed a beeper over the sun visor and the gym bag which had contained the stolen jewelry. The gym bag was found on the floorboard in front of the seat on which appellant was sitting as they drove off after the sale. Williams made an in-court demonstration proving that the beeper number was the one he had called.
Officer Russell ran after appellant, who fled into nearby woods. Appellant fell once but arose and continued to flee; however, after falling again he was apprehended and arrested at approximately 8:40 p.m. When returning from the place of arrest one of the officers found a loaded gun at the place where appellant had first fallen. After being arrested, appellant three times falsely stated his name to the police. While searching appellant, the police found $1,000 (one-half of the sale price for the stolen watches) in one of his pockets. The money found on appellant was identified as the money given to Williams to purchase the stolen jewelry. The remaining purchase money was found in the area where codefendant, later identified as Yves Henley, the driver of the Monte Carlo, was arrested. In addition to the money found in appellant's pocket, seven gold chains, identified as the same brand[1] as *809 those stolen from Morton's, were removed from around appellant's neck and one was removed from his mouth. Twenty watches and various items of jewelry, including a display container, were in the gym bag found in the Monte Carlo. One hundred watches had been stolen; seventy-nine watches were purchased by Williams and twenty were found in the bag, all of which were identified as having been taken from Morton's at the time of the break-in. There was no evidence presented to contradict any of the foregoing evidence, and all of the events described above occurred in less than a twenty-four hour period.
In determining the sufficiency of the evidence on appeal of a conviction, we must consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982); Evans v. Commonwealth, 215 Va. 609, 612-13, 212 S.E.2d 268, 271 (1975). The verdict of the trial court will not be disturbed unless it is plainly wrong or without evidence to support it.
Possession of property recently stolen is prima facie evidence of guilt of the crime of larceny, and throws upon the accused the burden of accounting for that possession. Fout v. Commonwealth, 199 Va. 184, 191, 98 S.E.2d 817, 821-22 (1957). No such account is disclosed by this record.
Guilt of breaking and entering a building may be established by circumstantial evidence; eyewitnesses are not required. Id. at 189, 98 S.E.2d at 821. Appellant does not dispute that there was proof of a breaking and entering at Morton's and that goods were stolen from the store. The evidence supports an inference that both the breaking and entering and the larceny were committed at the same time, by the same person, as a part of the same criminal enterprise. When combined with proof that the stolen property was found in appellant's possession soon thereafter, a prima facie case of appellant's guilt of breaking and entering was established. Guynn v. Commonwealth, 220 Va. 478, 480, 259 S.E.2d 822, 823-24 (1979). No evidence was presented by appellant to rebut the prima facie case created by the evidence. We conclude from our examination of the record that the jury reasonably could have concluded from the evidence that appellant was a perpetrator of the breaking and entering and theft. The evidence sufficiently supports appellant's convictions.
Over appellant's objection, the trial court admitted into evidence the gun and bullets contained therein which were found at the place appellant fell while attempting to avoid arrest. At trial, the ground for appellant's objection to the gun's admissibility was stated to be that "there is nothing to connect this man [appellant] with the pistol ... they are not going to be able to tie this gun, the gun, to this man ... it is highly prejudicial to introduce it ... it makes him look like a criminal ... I don't think we tied it to him." Thus, appellant's objection was based on the assertion that the Commonwealth had not "tied" the gun to appellant, while on appeal he limits his claim to an assertion that the "introduction of the gun was irrelevant and should not have been admitted." Rule 5A:18 requires that to save a point for appeal a party must make his objection at the time the evidence is offered, and state the specific grounds of the objection.
Assuming without deciding that appellant preserved his objection, we find that the gun and bullets were properly admitted for the jury's consideration. Our review of the record discloses that to support the convictions the Commonwealth relied heavily on circumstantial evidence, which is as acceptable as direct evidence to prove guilt. Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981). In all cases based on circumstantial evidence of guilt the conduct of the accused is an important factor in the estimate of the weight of circumstances which point to his guilt. Harris v. Commonwealth, 206 Va. 882, 887, 147 *810 S.E.2d 88, 92 (1966); see also Bowie v. Commonwealth, 184 Va. 381, 391, 35 S.E.2d 345, 349-50 (1945). In cases based on circumstantial evidence of guilt the Virginia Supreme Court has said that relevant evidence is any evidence which may throw light upon the matter being investigated, and while a single circumstance, standing alone, may appear to be immaterial or irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion. Peoples v. Commonwealth, 147 Va. 692, 704, 137 S.E. 603, 606 (1927).
In Bowie, the Supreme Court of Virginia reaffirmed that evidence of flight may be considered as evidence of guilt along with other pertinent facts and circumstances. Bowie, 184 Va. at 392, 35 S.E.2d at 350. The flight need not immediately follow the commission of the crime since the defendant may be suspected and become aware of the suspicion at a later date. Davis v. Maryland, 237 Md. 97, 104, 205 A.2d 254, 259 (1964), cert. denied, 382 U.S. 945, 86 S.Ct. 402, 15 L.Ed.2d 354 (1965); 1 Wharton's Criminal Evidence § 211 (13th ed. 1972). Thus, the acts or conduct of the defendant after the crime, which are not elements of the crimes charged, are admissible because they may tend to show a "consciousness of guilt." Jenkins v. Commonwealth, 132 Va. 692, 696, 111 S.E. 101, 102 (1922). See also 20 Am.Jur. Evidence § 291. In such cases, the defendant has no right to sanitize the evidence. See State v. Lambert, 104 Me. 394, 71 A. 1092 (1908). In Lambert, defendant was indicted for larceny and when arrested was found to be armed with a loaded pistol. The Court stated:
There was no apparent occasion for any legitimate use of the revolver by the defendant that day, and, if it was not loaded and carried for the purpose of aiding him to escape ... the defendant had full opportunity to explain for what purpose he did have it. "It is to-day universally conceded," says Mr. Wigmore, "that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." The possession of the tools suitable for effecting an escape is also deemed an incriminating fact which may go to the jury.
Id. at 396, 71 A. at 1093; CyState v. Davis, 535 S.W.2d 259, 260 (Mo.App.1976); see also Rodgers v. Texas, 468 S.W.2d 438, 440 (Tex.Crim.App.1971). Trial judges are permitted wide discretion in determining whether to admit evidence such as is objected to here. We find no abuse of that discretion.
Even if we found that it was error to have admitted the gun, we would find that such error was harmless beyond a reasonable doubt. Out of the imperative demands of common sense has grown the doctrine of harmless error. See Oliver v. Commonwealth, 151 Va. 533, 541, 145 S.E. 307, 309 (1928). Code § 8.01-678 provides that when it plainly appears from the record and the evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be reversed for any error committed at trial. This statute evinces legislative approval of the doctrine of harmless error. As the Supreme Court stated in Standard Paint Co. v. E. K. Vietor & Co., 120 Va. 595, 610, 91 S.E. 752, 757 (1917), appellate courts should not reverse for trial error unless injury is shown; such injury is not presumed but must affirmatively appear from the record. See also Fenner v. Commonwealth, 152 Va. 1014, 1028-29, 148 S.E. 821, 825-26 (1929) (injury must be shown to have resulted from the alleged error). "Appellate courts sit to correct substantial rather than fanciful errors." Waynick v. Walrond, 155 Va. 400, 412, 154 S.E. 522, 525 (1930). To warrant a reversal the errors must be substantial; otherwise, litigation would be interminable. Parsons v. Commonwealth, 154 Va. 832, 852-53, 152 S.E. 547, 554 (1930); Oliver, 151 Va. at 541, 145 S.E. at 309. The rule established by the Virginia Supreme Court is that error in a criminal case will require reversal of a conviction unless the error is harmless beyond a reasonable *811 doubt. See Chapman v. California, 386 U.S. 18, 21-22, 87 S.Ct. 824, 826-27, 17 L.Ed.2d 705 (1967). That test is met where other evidence of guilt is overwhelming. Jackson v. Commonwealth, 218 Va. 490, 495, 237 S.E.2d 791, 793 (1977). We conclude that even if it was error to admit the gun, and even if appellant had made the specific objection that he argues here, the evidence otherwise is so overwhelming of appellant's guilt that its admission was harmless beyond a reasonable doubt.
Appellant did not argue that the admission of the gun may have caused the jury to set an excessive punishment. He was sentenced to fifteen years on each charge, five years less on each charge than he could have received. The evidence disclosed the use of a beeper system to make contact with prospective purchasers of stolen property and indicates a well organized and sophisticated operation. Nothing in this record suggests that the sentence was excessive nor is there evidence to indicate that it was likely that a lesser sentence would have been imposed if the gun had not been introduced. Appellant offered no evidence in mitigation or excuse for his acts. We find no cause to disturb the jury's verdict.
Accordingly, finding no error and for the reasons stated, the judgment of the trial court is
Affirmed.
BENTON, Judge, dissenting.
The Commonwealth established sufficient facts and circumstances which, if believed by the jury, could have supported the burglary and larceny convictions. However, for no legitimate reason apparent on this record, the Commonwealth offered and was allowed to place before the jury a gun that had no proven relationship to those offenses. The gun was found in a field near the place where the defendant fell as he fled when an undercover policeman attempted to purchase the stolen goods almost twenty-four hours following the burglary. No evidence connects the gun to the defendant or to the commission of the burglary and larceny offenses. I believe that it was prejudicial error to admit the gun as evidence, and that this error is grounds for reversing the conviction.
Inexplicably, the majority sua sponte invokes Rule 5A:18. The Commonwealth has neither alleged nor argued that this issue is barred by Rule 5A:18. The Commonwealth obviously has not sought to bar the issue precisely because defense counsel properly preserved the issue before us. The objection was sufficient to alert the trial judge to the questions of possession, relevance, and prejudice:
[Defense Counsel] Judge, I think there is nothing to connect this man with the pistol there. We are not dealing with any armed robbery, and they are not going to be able to tie this gun, the gun, to this man, other than that. I think it is highly prejudicial to introduce it. It goes back, it makes him look like a criminal, when we are not dealing with armed robbery or anything of that nature. I don't think we tied it to him.
THE COURT: I am going to let it go to the jury, Mr. Maddox, for whatever they want to determine, and your objection is noted.
I can perceive no valid basis for raising the specter of Rule 5A:18.
The Commonwealth made no showing of the relevance of the gun to proof of the larceny or burglary. In admitting the evidence "for whatever [the jurors] want to determine," the trial judge made no determination that the gun was relevant to the charges. It is established in our jurisprudence that there are evidentiary limits beyond which the Commonwealth may not proceed in attempting to obtain a conviction.
Evidence which has no tendency to prove guilt, but only serves to prejudice an accused, should be excluded on the ground of lack of relevancy. For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto. Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters *812 in issue, because too remote or irrelevant, cannot be accepted in evidence.
Bunting v. Commonwealth, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967).
The Commonwealth's theory of prosecution was based upon a presumption of theft arising from the defendant's unexplained possession of recently stolen property. Not only did the Commonwealth fail to establish that the defendant possessed the gun, but the Commonwealth's own evidence establishes that the gun had "no causal relation or logical and natural connection with the guilt of the defendant and [was] irrelevant and immaterial to the charges against him." Id. Once the gun was admitted in evidence, the Commonwealth then proved that the gun was "a six shot [and] was loaded." The only probative value of evidence that a loaded gun was found at a place in the field where the defendant fell was to create an inference in the minds of the jurors that the defendant possessed the gun and was therefore a dangerous criminal.
The evidence thus served the dual purpose of allowing the Commonwealth to prove at once criminal propensity and bad character. It has long been established that "evidence that the defendant has committed an unrelated crime is inadmissible against him." King v. Commonwealth, 217 Va. 912, 914, 234 S.E.2d 67 (1977) (In a prosecution for attempted rape, evidence that the defendant was planning to use cocaine was inadmissible). Moreover, just as "[a] defendant introducing mitigating evidence at the guilt phase of a trial may be found to have put his character in issue," Duncan v. Commonwealth, 2 Va. App. 342, 346, 343 S.E.2d 392, 394 (1986), the Commonwealth's introduction of aggravating evidence has likewise put the defendant's character in issue. However, the Commonwealth may not put in issue the character of a defendant unless that defendant first makes his character an issue on his behalf. Fields v. Commonwealth, 2 Va.App. 300, 305-06, 343 S.E.2d 379, 382 (1986); Weimer v. Commonwealth, 5 Va. App. 47, 52, 360 S.E.2d 381, 383 (1987).
It is also abundantly clear from the record that the commonwealth used the loaded gun to urge the jury to levy a stiff sentence on the defendant. The Commonwealth's attorney argued to the jury in closing argument that this was not a "minor" case but rather was "a different kind of case" because the defendant possessed a loaded firearm. Evidence in aggravation of punishment is not admissible prior to a determination of guilt. See McClain v. Commonwealth, 189 Va. 847, 861, 55 S.E.2d 49, 56 (1949); see also Peterson v. Commonwealth, 225 Va. 289, 298, 302 S.E.2d 520, 526 (1983) (by statute evidence in aggravation is admissible in capital murder cases but only in the penalty stage). The defendant "shall be adjudged guilty only on evidence admissible on that issue." McClain, 189 Va. at 861, 55 S.E.2d at 56. The sole purpose of seeking admission of the gun into evidence was to prove an aggravating factor unrelated to proof of the charged offense. It was inadmissible before the jury for that purpose. Cf. Duncan, 2 Va.App. at 346-47, 343 S.E.2d at 395 (evidence of mitigating factors "was relevant only to the issue of punishment" and was not appropriate "evidence before the jury in mitigation of punishment").
The gun was collateral to the issue of guilt and was not probative of any offense for which the defendant was being tried. "[T]he evidence elicited by the Commonwealth was prejudicial in that the implications it raised tended to divert the minds of the jurors from the issues before them." Lewis v. Commonwealth, 225 Va. 497, 501, 303 S.E.2d 890, 892 (1983). "[T]he error in admitting the evidence could have affected the [guilt] verdict [as well as the sentence], thereby denying [the defendant] the fair and impartial trial to which he was entitled." King, 217 Va. at 915, 234 S.E.2d at 69. Accordingly, I would reverse and remand for a new trial.
Upon a Petition for Rehearing En Banc
Before the Full Court
On August 14, 1989 came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the *813 judgment rendered herein on August 1, 1989 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on August 1, 1989 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
NOTES
[1] Strict proof of the identity of the stolen articles is not required where the possession is unexplained and recent. See Cook v. Commonwealth, 214 Va. 686, 204 S.E.2d 252 (1974).