COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Alston and Senior Judge Willis
Argued at Richmond, Virginia


CALVIN LEE ARGENBRIGHT, JR.

OPINION BY
v.        Record No. 1758-09-3        JUDGE ROSSIE D. ALSTON, JR.
SEPTEMBER 7, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Humes J. Franklin, Jr., Judge

David C. Smith, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Josephine F. Whalen, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


In April 2009, Calvin Lee Argenbright, Jr. (appellant), was convicted in a jury trial of

uttering a forged writing, in violation of Code § 18.2-172, and obtaining money by false

pretenses, in violation of Code § 18.2-178. On appeal, appellant argues that the trial court

abused its discretion by excluding the testimony of all of his proffered character witnesses. We

hold that the trial court did not abuse its discretion in excluding the character evidence proffered

by appellant. Therefore, we affirm the judgment of the trial court.

Whether evidence is admissible falls within the broad discretion of the trial court, and

this Court will not disturb the trial court's ruling absent a clear abuse of discretion. Blain v.

Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).

The resolution of appellant's claim on appeal is reached by determining whether or not

appellant offered the testimony for a proper purpose *and* laid the proper foundation to support

the admission of his proffered character evidence. In this regard, character evidence is

admissible for two different purposes at trial. First, "'[a] person on trial for a criminal offense has the right to introduce evidence of his reputation for pertinent character traits on the theory that it is improbable that a person who has a good reputation for such traits would be likely to commit the crime charged against him.'" Weimer v. Commonwealth, 5 Va. App. 47, 52, 360 S.E.2d 381, 383 (1987) (quoting Zirkle v. Commonwealth, 189 Va. 862, 871, 55 S.E.2d 24, 29 (1949)). "Evidence of this nature may be considered and weighed by the jury in determining his guilt or innocence, and, in a proper case, the punishment to be imposed." Zirkle, 189 Va. at 871, 55 S.E.2d at 29.

On appeal, appellant argues that he offered evidence of his character for truthfulness and veracity as substantive proof of his innocence. The Supreme Court has long recognized that an individual's character for truthfulness is implicated in crimes involving the theft of another's possessions: "Evidence of larceny involves 'the perpetrator's character for truth,'" and "stealing is a crime 'of that character which men generally are not found to commit unless when so depraved as to render it extremely probable that he will not speak the truth.'" Bell v. Commonwealth, 167 Va. 526, 535-36, 189 S.E. 441, 445-46 (1937) (quoting Davidson v. Watts, 111 Va. 394, 397-98, 69 S.E. 328, 329 (1910)). Appellant argues that he should have been allowed to introduce proof of his reputation for truthfulness and veracity to show that it was improbable that he obtained money by false pretenses from the victim or that he uttered a forged check.

A second basis for the admission of character evidence is presented if the defendant testifies on his own behalf, and his character for truthfulness is called into question. Under these circumstances, he is entitled to present character evidence that supports his credibility as a witness. Fry v. Commonwealth, 163 Va. 1085, 1087, 177 S.E. 860, 861 (1935) (citing Miller v. Harless, 153 Va. 228, 149 S.E. 619 (1929)). Accordingly,

> "whenever the character of a witness for truth is attacked, either by direct evidence of want of truth, or by cross-examination, or by proof of contradictory statements, in regard to the material facts, or by disproving by other witnesses the material facts stated by him in his examination; or in general, whenever his character for truth is impeached in any way known to the law, the party calling him may sustain him by evidence of his general reputation for truth."

Id. (quoting Miller, 153 Va. at 241, 149 S.E. at 623). Facts are "material" if they are those facts that "'the cross-examining party would be entitled to prove . . . in support of [its] case.'" Selheimer v. Melville, 224 Va. 323, 326, 295 S.E.2d 896, 898 (1982) (quoting Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 786 (1918)). "Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is admissible." Id. (citing Stamper v. Commonwealth, 220 Va. 260, 269, 257 S.E.2d 808, 815 (1979); Ry. Co. v. Golladay, 164 Va. 292, 309, 180 S.E. 400, 407 (1935)).

However, the prerogative of the defendant to introduce character evidence in appropriate circumstances is not unlimited. "The accused, in order to establish good character, is not permitted to prove specific acts, custom or course of conduct." Chiles v. Commonwealth, 12 Va. App. 698, 700, 406 S.E.2d 413, 414 (1991) (citing Zirkle, 189 Va. at 871, 55 S.E.2d at 29; Fields v. Commonwealth, 2 Va. App. 300, 306, 343 S.E.2d 379, 382 (1986)). "The witnesses called may not testify to their own personal opinion of the accused, or to a special reputation of him formed upon a single occasion." Id. (citing Charles E. Friend, The Law of Evidence in Virginia § 49 (3d ed. 1988)); accord Weimer, 5 Va. App. at 54, 360 S.E.2d at 384 ("[Witnesses] may not testify that their own observation and knowledge leads them to believe that the defendant is a person of good reputation."). Instead,

> [the accused] is confined to proof of the opinion that the people of the community have about him. His specific acts, customs, conduct, etc., create this opinion. It is the sum total of all of these things—that is, the consensus of opinion of the people of the community in which [the accused] lives that is considered pertinent and proper evidence to prove character.

Zirkle, 189 Va. at 871, 55 S.E.2d at 29. Essentially, "[character] witnesses are not permitted to testify about anything except hearsay. . . . They are [only] permitted to summarize what they have heard in their community." Weimer, 5 Va. App. at 54, 360 S.E.2d at 384. In accordance with these principles, this Court has recognized that "[i]n legal parlance, where reference is made to the *character* of the accused, character is used as a synonym for *reputation*." Byrdsong v. Commonwealth, 2 Va. App. 400, 402, 345 S.E.2d 528, 529 (1986) (citing Zirkle, 189 Va. at 871, 55 S.E.2d at 29).[1]

With these principles in mind, we consider the "character evidence" proffered by appellant and ultimately excluded by the trial court during appellant's trial for uttering a forged writing and obtaining money by false pretenses. Appellant testified on his own behalf, and the Commonwealth's attorney questioned appellant's credibility during the cross-examination of appellant. Thereafter, appellant offered the testimony of five character witnesses for the purpose of showing appellant's character for truthfulness and veracity. Additionally, appellant offered the testimony of one of his five witnesses for the dual purpose of showing appellant's character for abiding the law as well as his character for truthfulness.

I. Excluded Character Evidence

A. Michelle Shank

Appellant first proffered the testimony of Michelle Shank (Shank), appellant's former probation officer, as evidence of appellant's reputation for truthfulness and veracity. Shank testified that she supervised appellant until his case file for crimes unrelated to the instant case was closed in July 2008. She stated that appellant's probation supervision case file was closed because he "had a successful adjustment to his supervision; he paid all his [c]ourt costs; he paid

---

[1] Nonetheless, a distinction between character and reputation exists: "'Character is what one really is; reputation is what others believe him to be.'" Zirkle, 189 Va. at 871, 55 S.E.2d at 29 (quoting Henry Ward Beecher).

his restitution of approximately $3,000 in full; he didn't have any new law violations at that time; and he complied with all Office appointments and home contacts."  The trial court excluded Shank's testimony because in its view the evidence had no bearing on appellant's reputation in the community for truth and veracity and, therefore, it was irrelevant.

Based on Shank's proffered testimony, we cannot say that the trial court abused its discretion.  Shank testified regarding appellant's *specific conduct*, rather than the "'*consensus of opinion of the people of the community*'" of appellant, and thus, the trial court properly excluded her testimony.  See Chiles, 12 Va. App. at 700, 406 S.E.2d at 414 (emphasis added) (quoting Zirkle, 189 Va. at 871, 55 S.E.2d at 29); see also Fields, 2 Va. App. at 306, 343 S.E.2d at 382.

## B.  Teresa Johnson

Appellant next proffered the testimony of Teresa Johnson (Johnson), who had known appellant for approximately five years.  The following exchange occurred during the proffer of Johnson's testimony:

> Q.  Do you know [appellant] in the community in which he lives and works?
>
> A.  Yes, sir.
>
> Q.  Do you know his reputation for truthfulness and veracity?
>
> A.  Good.
>
> Q.  What is that?  How do you know that?
>
> A.  Because he worked with my husband in the backyard doing cars, and they never had no problems or nothing, and they . . . did everything perfect.  I mean, they never had no arguments or nothing.  Nothing went on.
>
> Q.  Thank you.
>
> COURT:  That's not the community.  That's her husband. He may form a part of the community.

> Q. Did you ever see anyone else—hear anyone else talk about [appellant]?
>
> A. No.
>
> Q. Other than your husband?
>
> A. Nobody.

Considering the proffered testimony of Johnson, we cannot say that the trial court abused its discretion by excluding Johnson's testimony. By her own admission, Johnson had not heard anyone other than her husband talk about appellant, and her opinion of appellant was based entirely on her personal experience with, and observations of, appellant. Like the proffered testimony of Shank, Johnson's testimony was inadmissible because she was not able to testify regarding "the consensus of opinion of the people of the community." Zirkle, 189 Va. at 871, 55 S.E.2d at 29; accord Chiles, 12 Va. App. at 700, 406 S.E.2d at 414; Fields, 2 Va. App. at 306, 343 S.E.2d at 382.

### C. Frank Washington

Third, appellant proffered the testimony of Frank Washington (Washington), a law enforcement officer who had known appellant for eight years. When asked if he knew what appellant's reputation for truthfulness and veracity was in the community, Washington responded, "So far as in my book, he's in an excellent position, for me." When questioned further regarding appellant's reputation, Washington stated, "I haven't seen him get in no trouble at all, around me." Washington ultimately admitted he had not heard anyone speak of appellant's reputation in the community. The trial court excluded Washington's testimony because it did not describe appellant's reputation in the community.

We cannot say the exclusion of this testimony was an abuse of discretion by the trial court. Washington merely described appellant's behavior around Washington and Washington's personal opinion of appellant, rather than appellant's reputation for truthfulness and veracity in

the community.  <u>Chiles</u>, 12 Va. App. 699-700, 406 S.E.2d at 141; <u>Weimer</u>, 5 Va. App. at 54, 360 S.E.2d at 384; <u>see also</u> <u>Jackson v. Commonwealth</u>, 266 Va. 423, 440, 587 S.E.2d 532, 544 (2003) (holding that "a witness must be aware of the party's reputation before he may testify as to the lack of any reputation for a particular characteristic").

### D.  Kathy Robey

Appellant also proffered the testimony of Kathy Robey (Mrs. Robey), who had lived in the same campground as appellant for approximately one year.  Mrs. Robey stated that she knew appellant's reputation in the community because "[w]e all talked very highly of [appellant].  He helped everyone in that campground."  When asked if she knew his reputation for truthfulness and veracity specifically, Mrs. Robey stated, "He had a very good reputation, especially with me."  She then testified that she never talked to anybody else in the campground about appellant's reputation for truthfulness, and stated, "I can't even recall having a conversation about anything like that."  The trial court excluded Mrs. Robey's testimony because it did not relate to appellant's reputation for truthfulness and veracity.

While Mrs. Robey testified that appellant had "a very good reputation" and helped his neighbors, this testimony is not relevant to the description of appellant's reputation for truthfulness and veracity in the community.  While showing an accused's reputation for truthfulness and veracity is generally recognized as acceptable character evidence, <u>see</u> <u>Weimer</u>, 5 Va. App. at 53, 360 S.E.2d at 383; <u>Bradley v. Commonwealth</u>, 196 Va. 1126, 1133, 86 S.E.2d 828, 832 (1955), an accused's reputation for being "helpful" standing alone is simply not relevant evidence for the fact finder's consideration of appellant's reputation in the community.

Given Mrs. Robey's admission that she never talked to any of the campground's residents about appellant's reputation for truthfulness and veracity, we cannot say the trial court erred when it excluded Mrs. Robey's testimony.  The trial court was entitled to infer that Mrs. Robey's

testimony regarding appellant was based on her own personal opinion, rather than her knowledge of the community's opinion of appellant. As such, Mrs. Robey's testimony was not admissible. See Chiles, 12 Va. App. at 699-700, 406 S.E.2d at 141 (character witnesses are not permitted to "testify to their own personal opinion of the accused").

### E. Frank Robey

Finally, appellant proffered the testimony of Frank Robey (Mr. Robey), Mrs. Robey's husband, who lived with his wife in the same campground as appellant for approximately one year. The following exchange occurred during the proffer of Mr. Robey's testimony:

> Q. . . . [D]id you see [appellant] interact in the campground?
>
> A. Yes.
>
> Q. And . . . With other individuals in the campground?
>
> A. Yes.
>
> Q. All right. And did any of those people discuss his reputation with you?
>
> A. No.
>
> Q. Did you discuss with any of your neighbors [appellant's] reputation within the community?
>
> A. Yes.
>
> Q. All right. And what was that?
>
> A. That [appellant's] a good guy. He . . . He—[appellant] was helpful—very helpful to a lot of people.
>
>      *    *    *    *    *    *    *
>
> COURT: You know . . . he might be a good guy; and he can be helpful. Did you ever speak, when you were speaking to any of the neighbors in the campground, about [appellant] besides being helpful? Did you ever talk to them about whether he was truthful and honest?

A. Yeah. Yeah; he was . . . He's truthful and honest, and, you know, in talking to other—we . . .

COURT: Did they tell you that . . .

A. Talking to new people that would come into the campground.

COURT: You talked with other people in the campground?

A. Yeah.

COURT: And you talked about his reputation for truthfulness and honesty?

A. Talking about . . . You . . . Well, yeah; as far as being a good person. That's . . . To me, it's truthful and honesty.

\*     \*     \*     \*     \*     \*     \*

COURT: Did you ask any of the other people that were there in the campground what it—what they thought of [appellant's] reputation for truthfulness and honesty?

A. As far as asking about [appellant], no; I . . . [appellant] was the first person I met in the campground.

\*     \*     \*     \*     \*     \*     \*

Q. Did anybody ever mention to you whether [appellant] was truthful or not?

A. The . . . No; not—not saying it like that. It's . . . [appellant] was a good person. I mean, that—talking to other people, and . . . I take that as a . . . you know, truthful, honest person—good . . .

Q. People would tell you that [appellant] was a good guy?

A. Yeah.

Appellant argued that Mr. Robey considered being a "good guy" to be synonymous with being

"someone who is law-abiding, . . . truthful and honest and helpful." The trial court disagreed and

- 9 -

excluded Mr. Robey's testimony because it was not relevant to whether appellant had a "reputation in the community for truthfulness and honesty, or for law-abidingness."

On appeal, appellant argues that excluding Mr. Robey's testimony is tantamount to allowing the case to be controlled by "semantical subtleties" under Barlow v. Commonwealth, 224 Va. 338, 341, 297 S.E.2d 645, 646 (1982). In Barlow, the Supreme Court held the trial court erred in excluding testimony that Barlow had "no reputation for violent behavior in the community," on the grounds that such a reputation was "not the equivalent of having a reputation for being a peaceable, lawabiding [sic] citizen." 224 Va. at 339-42, 297 S.E.2d at 646-47. The Supreme Court found that the trial court's determination was improperly "controlled by . . . semantical subtleties. If the attorney had phrased the question differently and inquired as to [Barlow's] general reputation for violence or nonviolence, the import of the response would have been the same." Id. at 341, 297 S.E.2d at 646.

We recognize that witnesses need not utilize precise legal language when giving character evidence, id.; Byrdsong, 2 Va. App. at 406, 345 S.E.2d at 531 ("[T]he lay witness cannot be expected to respond with the precision of a skilled surgeon."); however, we cannot say that having a reputation for being a "good guy" is necessarily the equivalent of having a reputation for truthfulness and veracity or for abiding the law, the character traits Mr. Robey's testimony was proffered to show. Mr. Robey specifically testified that he interpreted his neighbors' comments that appellant was a "good guy" to mean his neighbors believed appellant was truthful and honest. However, Mr. Robey admitted that no one told him appellant was truthful and honest. Because Mr. Robey's neighbors never discussed appellant's reputation for truthfulness and honesty or for abiding the law, Mr. Robey's interpretation constitutes an impermissible personal opinion. See Zirkle, 189 Va. at 871, 55 S.E.2d at 29; Chiles, 12 Va. App.

at 700, 406 S.E.2d at 414; <u>Fields</u>, 2 Va. App. at 306, 343 S.E.2d at 382.  As such, we cannot say the trial court abused its discretion in excluding Mr. Robey's testimony.

## II.  Conclusion

We conclude that the trial court committed no reversible error in excluding the testimony of appellant's proffered character witnesses.  Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>