STATE OF MAINE *vs.* THOMAS L. LAMBERT.

Cumberland.    Opinion November 4, 1908.

*Criminal Law.    Evidence.    Reputation.    Expression of Opinion by Presiding Justice.    Revised Statutes, chapter 84, section 97.*

The fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name and related conduct, are admissible as evidence of consciousness of guilt and thus of guilt itself. But it is for the jury to determine what weight and value should be given to such evidence.

The defendant was indicted for larceny and at the trial the arresting officer testified that the defendant had a loaded revolver in his overcoat pocket when arrested. *Held:* That the evidence was admissible.

The defendant when on trial for larceny, called as a witness a resident of Portland, who testified that he had known the defendant for five years and that he had seen him quite frequently and had numerous business dealings with him. There was no evidence that the defendant had ever resided in Portland, nor that the witness had ever resided in a community where the defendant had resided. The defendant's counsel asked the witness if he knew the defendant's "reputation for honesty in that community." The question was excluded. The witness further testified, however, that in his dealings with the defendant he had found him "honest and reliable" but that he had never heard his reputation discussed or referred to.

*Held:* (1) That it was not indispensable that the witness to the defendant's reputation should have resided in the same community with the defendant.

(2)   That the defendant's reputation for honesty was not regularly provable by personal knowledge of the witness derived from specific instances in his dealings with the defendant.

(3)   That the ruling allowing the witness to state that he "found him honest and reliable" was more favorable to the defendant than he was entitled to.

(4)   That the defendant was not aggrieved by the ruling excluding the question relating to the defendant's "reputation for honesty in that community."

The defendant excepted to an alleged expression of opinion by the presiding Justice upon issues of fact in contravention of Revised Statutes, chapter 84, section 97. *Held:* That a careful examination of all the defendant's exceptions relating to the comments of the presiding Justice upon the testimony and the conduct and appearance of witnesses and the language in which the instructions were given in the charge to the jury, fails to disclose any exceptionable infringement of the statute.

On exceptions by defendant.    Overruled.

The defendant was indicted for the larceny of "one horse of the value of two hundred dollars, one wagon of the value of one hundred dollars and one harness of the value of ten dollars."

Tried at the January term, 1908, Superior Court, Cumberland County.    The jury found the defendant guilty.    The defendant excepted to several rulings made by the presiding Justice during the trial and also excepted to an alleged expression of opinion by the presiding Justice.    It appears from the bill of exceptions that "the notes of the official stenographer taken at the trial of this indictment were lost in the fire which destroyed City Hall (Portland) on January 24, 1908, so that it is impossible to make exact quotations either from the evidence or the charge."

The case is stated in the opinion.

*Joseph E. F. Connolly*, County Attorney, for the State.

*John B. Kehoe*, for defendant.

SITTING :   EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, BIRD, JJ.

WHITEHOUSE, J.    At the January term, 1908 of the Superior Court of Cumberland County, the defendant was found guilty by the jury of the larceny of a horse, wagon and harness, the property of George

A. Lufkin, on the evening of Sunday, September 15, 1907. The case comes to the Law Court on exceptions to the rulings of the presiding Judge admitting and excluding certain evidence during the progress of the trial, and to the alleged expression of opinion by the presiding Judge upon issues of fact in contravention of section 97 of chapter 84 of the Revised Statutes.

Eugene Groves, who was indicted at the same term as an accomplice and pleaded guilty to the charge, appeared as a witness for the State and testified that the defendant came to his house with a team Saturday evening September 14, and remained there over night; that the next evening, at the defendant's request, he rode with him to Walnut Hill church and saw the defendant Lambert drive away from the horse sheds back of the church with the Lufkin team; that thereupon they drove along the road some distance, Lambert driving the Lufkin team and Groves driving the other; that Lambert then stopped and gave him two dollars and a pint of whiskey and told him to go home and that Lambert then drove off with the Lufkin team.

Other witnesses testified for the State that they met these two men riding together in the same team that day towards Falmouth corner. One witness testified that he met them riding in separate teams on the road from Walnut Hill church; that he identified the Lufkin horse on the road that day and recognized Lambert as the driver of it.

The defendant testified inter alia that his residence at that time was in Tyngsboro, Mass., and that his business was buying and selling goods including horses. He admitted that he was with Groves on the day of the larceny and that in the afternoon they drove in a "round-about way" to the electric cars at Falmouth Foreside where they separated, and that he, the defendant, then went on to Portland by the electric cars and left for Boston on the steam cars arriving there between nine and ten o'clock. No part of the Lufkin team was afterwards found.

1. At the trial, deputy sheriff Foley, testified that he arrested the defendant on an electric car coming from Yarmouth to Portland October 3, 1907. The County Attorney inquired if the defendant

was armed at the time of the arrest. The defendant's counsel objected to the question, but before the court could rule upon it, the witness promptly answered that the defendant was armed with a revolver. The court denied the request of the defendant's attorney to have the testimony striken out, and the witness testified further as to the details of the arrest, and stated the defendant had the revolver in his right hand overcoat pocket and that it was loaded.

The defendant admitted in cross examination that he was coming from Groves' house at the time of the arrest and had then learned from Groves' wife, for the first time, that Groves was under arrest, but she did not know upon what charge.

Upon this state of facts, it is the opinion of the court that there was no error on the part of the presiding Judge in declining to strike out the testimony. The defendant had just been informed that his accomplice was under arrest. There was no apparent occasion for any legitimate use of the revolver by the defendant that day, and if it was not loaded and carried for the purpose of aiding him to escape by intimidating any officer who might recognize him and attempt to arrest him, the defendant had full opportunity to explain for what purpose he did have it. "It is today universally conceded, says Mr. Wigmore, that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name and related conduct, are admissible as evidence of consciousness of guilt and thus of guilt itself." 1 Wigmore on Ev., sec. 276; *State* v. *Frederic*, 69 Maine, 400. The possession of tools suitable for effecting an escape is also deemed an incriminating fact which may go to the jury. *State* v. *Duncan*, 116 Mo. 288, 22 S. W. 699; *Clark* v. *Com.* (Ky.), 32 S. W. 131; *State* v. *Palmer*, 65 N. H. 216. And evidence that the defendant had a revolver under his pillow when arrested and that he resisted arrest was held admissible in *People* v. *Burns*, 67 Mich. 537, 35 N. W. 154. So in a prosecution for picking a pocket, it is competent to show that the accused when arrested, had a billy on his person. *People* v. *Machen*, 101 Mich. 400, 59 N. W.

In the case at bar it was for the jury to estimate what weight and value should be given to the evidence excepted to as an indication of the conscious guilt of the defendant.

2.  The defendant called a witness by the name of Jordan, a resident of Portland, who testified that he had known the defendant for five years, and that he had seen him quite frequently and · had numerous business dealings with him.   There was no testimony that the defendant had ever lived in Portland, nor that Jordan had ever lived in a community where the defendant had resided.   The witness was asked by defendant's counsel if he knew the defendant's "reputation for honesty in that community," and the question was excluded by the court.   The witness further testified, however; that in his dealings with the defendant, he had found him "honest and reliable," but that he had never heard · his reputation in any community discussed or referred to.   The defendant called another witness who offered to testify to substantially the same facts under the same conditions, and his testimony as to the defendant's "reputation for honesty in that community," was also excluded, and exceptions were taken in each instance.

It was not indispensable that the witnesses to his reputation should have resided in the same community with the defendant.   His general reputation as to honesty may have been better established and more definitely understood in the community where the witnesses lived and where they had had "numerous business dealings with him."   "In the conditions of life today especially in large cities, a man may have one reputation in the suburb of his residence and another in the commercial or industrial circles of his place of work. .   .   .   .. There may be distinct circles of persons, each circle having no relation to the other, and yet each having a reputation based on constant and personal observation of the man.   There is no reason why the law should not recognize this.   The traditional phrase about "neighborhood" reputation was appropriate to the conditions of the time ; but it should not be taken as imposing arbitrary limitations not appropriate in other times.   Alia tempora, alii mores."   2 Wigmore on Evidence, section 1616, and cases cited. "The rules of evidence" said Lord Ellenborough, "must expand

according to the exigencies of society." *Pritt* v. *Fairclough*, 3 Camp. 305.

In the case at bar the witness Jordan was allowed to testify that "in his dealings with the respondent, he had found him 'honest and reliable,' but that he had never heard his reputation in any community discussed or referred to." So far as this last statement implies that the witness had not had sufficient opportunity to learn what the defendant's reputation was, he would not be qualified to testify as to reputation. But if from long acquaintance and "numerous business dealings" with him, he had had opportunities for learning about his reputation, the fact that he had never heard it "discussed or referred to," would be cogent evidence that it was good. It is accordingly a rule of evidence that a witness to good reputation may testify that he has never heard anything said against the person. 2 Wigmore on Ev., sec. 1614. But since the defendant's reputation for honesty was not regularly provable by personal knowledge of the witness derived from specific instances in his dealings with the defendant, the ruling which allowed the witness to state that he "found him honest and reliable" was more favorable to the defendant than he was entitled to. If, therefore, it be assumed that the witness was qualified to state what the general reputation of the defendant was in that community, the defendant was not aggrieved by the refusal of the presiding Judge to permit him to answer the question and there was no exceptionable error.

3. A careful examination of all of the defendant's exceptions relating to the comments of the presiding Judge upon the testimony and the conduct and appearance of witnesses, and the language in which the instructions were given in his charge to the jury, fails to disclose any exceptionable infringement of the statute in that respect. In *McLellan* v. *Wheeler*, 70 Maine, 285, the court said: The statute does not go so far as to prohibit the presiding Judge from stating to the jury the questions which they are called upon to determine . . . . If the judge is of such a happy temperament as to be indifferent whether the cases tried before him are decided rightly or wrongly, or not at all, the statute will justify him in omitting such statement. But it does not prohibit it . . . .

Neither is the utterance of a mere truism, or of a matter of common experience which nobody would think of disputing, however it might bear upon the issue, an infringement of the statute prohibition." "It does not follow that the judge has expressed an opinion upon the issue because his opinion may be inferred from some allusion which he may make to some obvious and indisputable fact." See also *State* v. *Day*, 79 Maine, 120; *York* v. *R. R. Co.*, 84 Maine, 117; *Hamlin* v. *Treat*, 87 Maine, 310; *Jameson* v. *Weld*, 93 Maine, 345.

Furthermore, in the case at bar, in order that nothing in the conduct of the trial or the charge to the jury should be construed as an expression of opinion upon the question of the defendant's guilt, the presiding Judge made the following observations at the close of the charge: "The presiding Justice has no right, and in this case no intention to express any opinion as to the guilt or innocence of the respondent, or the effect or weight to be given to any evidence in the case; and that the jury, if they thought they detected any such expression of opinion, were to entirely disregard it, and so far as their verdict was concerned, rely entirely upon their own independent judgment as to the weight and effect to be given to the testimony as a whole."

<div align="right">

*Exceptions overruled.*