## Richmond

## OGDEN DOREMUS KING v. COMMONWEALTH OF VIRGINIA.

April 22, 1977.

Record No. 760589.

Present, All the Justices.

*Max Jenkins (J. L. Dillow,* on brief), for plaintiff in error.

*Guy W. Horsley, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Ogden Doremus King, charged with attempted rape in violation of Va. Code §§ 18.1-17 and 18.1-44 (Cum. Supp. 1975), was found guilty by a jury which fixed his punishment at confinement in jail for three months and payment of a fine of $1,000. By order of January 12, 1976, which King has appealed, the trial court entered judgment on the verdict.

The prosecutrix, Jennifer Slawson, was a student at Virginia Polytechnic Institute and State University. On the evening of April 25, 1975, she, her roommate, Lydia Shaeffer, and another young woman went to the 117 Club in Blacksburg, where they listened to the music of a band. Jennifer drank two or three beers. Around midnight she saw Ogden King, a fellow student whom she had met previously but knew only slightly. Later King

invited her to accompany him to a party, and, after discussing the matter with her roommate and her other companion, she decided to go. About 1:00 to 1:30 a.m., when the 117 Club was closing, King, his roommate, Jeff Riggs, Slawson, Judy Goodwin, who was also a student, and her friend John, left for the party at Goodwin's house. Riggs drove his pickup truck in which Slawson and King rode as passengers. After stopping for cigarettes they arrived at Goodwin's and parked behind the car in which Goodwin and John had preceded them. Riggs helped Goodwin get John, who was drunk, out of the car and into the house.

On the way to Goodwin's King had made advances toward Slawson. He admitted putting his arm around her, putting his hand on her thigh, and telling her that he wanted to take her to bed. Slawson testified that she rejected his advances and asked him to leave her alone; that King told her she could not come to the party if she was not "sweet" to him; that she asked King to take her home; and that King told her if she "was going to be that way" she could walk home, which she estimated would require at least 45 or 50 minutes. King admitted the truth of this much of Slawson's testimony.

Slawson further testified that before King went into the house he told her to sit in the truck and to try to make up her mind to be "nice to him" by going to bed with him; that she waited in the truck, did not change her mind, and expected King to take her home after he had spoken to his friends in the house; and that she decided "it wasn't the kind of party" she wanted to attend. The Commonwealth's Attorney then asked, "What were they supposed to do at this party?" The prosecutrix answered, "They were going to do some cocaine." The Commonwealth's Attorney inquired, "Who was?" King's counsel objected and moved for a mistrial, which the court overruled.

The testimony of the prosecutrix continued that King returned to the truck after about five minutes, asked her if she had changed her mind about his proposal, and, when told that she had not, told her again to walk home. When she tried to get out of the truck to walk King held her, called her insulting names, and put his hand over her mouth to prevent her from screaming. She got the truck door open, but was thrown to the ground by King, who fell on top of her, ripped her clothes, choked her, and

told her that he was going to have sexual intercourse with her. After struggling with King on the ground for five or ten minutes Slawson managed to escape, ran to a 7-Eleven store several blocks away, called the police, and reported the facts to them. There was evidence that she was hysterical at this time and that a physician who examined her the following day found a bruise and a scrape on her left shoulder, a bruise approximately two inches in diameter on her left thigh, and a small bruise on her left leg.

King testified, and the testimony of Riggs and Goodwin tended to corroborate him, that after he entered the Goodwin house he never returned to the truck in which Slawson was sitting. According to King's testimony, the last time he saw Slawson was when he told her to walk home if she did not want to go to bed with him. He denied being in the truck when she got out of it, denied falling on her, and denied struggling with her on the ground. Admitting that he fled from the Goodwin house when the police came there looking for him, King attributed this action to panic. He later voluntarily turned himself in at the police station.

The motion for a mistrial based upon the reference by the prosecutrix to the proposed use of cocaine at the party was renewed and overruled at the conclusion of the Commonwealth's evidence and at the end of all the evidence. When the motion was first renewed the trial judge stated that after having the reporter play back the tape containing the testimony in controversy he found nothing in the statement that would prejudice the jury against the defendant. We disagree with his conclusion.

The Attorney General acknowledges the general rule that evidence that a defendant has committed an unrelated crime is inadmissible against him. *Largin* v. *Commonwealth*, 215 Va. 318, 208 S.E.2d 775 (1974); *Montgomery* v. *Commonwealth*, 214 Va. 343, 200 S.E.2d 577 (1973); *Eccles* v. *Commonwealth*, 214 Va. 20, 197 S.E.2d 332 (1973); *Artis* v. *Commonwealth*, 213 Va. 220, 191 S.E.2d 190 (1972); *Boyd* v. *Commonwealth*, 213 Va. 52, 189 S.E.2d 359 (1972); *Barber* v. *Commonwealth*, 182 Va. 858, 30 S.E.2d 565 (1944). The Attorney General argues, however, that the statement of the prosecutrix was not evidence that King committed another crime, because it neither named him nor directly implicated him in criminal activity. Nevertheless, a

reasonable inference is that Slawson was referring to the other persons at the party, only four in number, Goodwin, John, Riggs, and King, as possessing and planning to use cocaine, a controlled drug, in violation of the law.

The Attorney General next says that the statement was relevant to explain why Slawson chose to remain in the truck rather than enter Goodwin's house and was therefore admissible as an exception to the general rule under the guidelines set forth in *Kirkpatrick* v. *Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). There we held that evidence of other criminal acts is admissible where such evidence is connected with or leads up to the offense for which the accused is being tried. But the use of cocaine had nothing to do with the crime of attempted rape for which King was being tried. Moreover, Slawson had already explained why she did not go into the house. According to her testimony, King had made it plain to her that if she would not consent to go to bed with him she could not attend the party, and she had persisted in refusing his demands. Therefore, the gratuitous injection into the trial, by the Commonwealth Attorney's question and Slawson's answer, of evidence as to the purpose of the party was unnecessary and irrelevant. Nor can it be said, as the Attorney General argues alternatively, that the error was harmless as a matter of law. At a time of widespread revulsion against the use of controlled drugs we cannot avoid the conclusion that Slawson's statement could have prejudiced the jury against King. We believe that the error in admitting the evidence could have affected the verdict, thereby denying King the fair and impartial trial to which he was entitled.

We do not pass on the question whether giving a cautionary instruction to the jury to disregard the prejudicial evidence, in lieu of granting King's motion for a mistrial, would have sufficed to correct the error, because the trial court gave no such admonition. The unrebuked reference to cocaine remained before the jury and carried the additional weight of the trial court's sanction.

Accordingly, we will reverse the judgment of the trial court and remand the case for a new trial.

*Reversed and remanded.*