**Richmond**

MAYFIELD B. HOPE, a/k/a DARYL DAVID HARRIS

v.

COMMONWEALTH OF VIRGINIA

No. 1195-87-2

Decided May 22, 1990

382

COUNSEL

Milton E. Maddox (Wells & Paris, on brief), for appellant.

Birdie H. Jamison, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## ON REHEARING EN BANC

OPINION

BAKER, J.—Mayfield B. Hope (appellant) was granted a rehearing *en banc* from a panel decision affirming the judgment of the Circuit Court of Henrico County (trial court) which approved his jury convictions for breaking and entering (statutory burglary) and grand larceny. The sole issue presented on rehearing is "[w]hether the trial court erred in allowing the Commonwealth to introduce into evidence a gun and bullets found at the scene of [his] apprehension." We hold that the trial court did not err in

allowing that evidence to be considered by the jury; thus, we affirm.

On appeal, we consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982). The uncontradicted evidence established that at approximately 3:00 a.m. on April 30, 1987, the Henrico police responded to an activated burglar alarm at Eastgate Mall. Upon their arrival, they discovered that someone had broken into the mall through a skylight. Entry into Morton's Jewelry (Morton's) store, located inside the mall, had been gained by smashing the entrance door. Eighteen thousand dollars worth of watches and chains was stolen by smashing the glass cases which had displayed them.

On the same day, approximately five hours later, Henrico County Investigator Williams received a call from an informant advising him that two males, one of whom was named Mayfield (appellant's first name), were offering stolen jewelry for sale and could be reached by calling a beeper number, leaving a number for call-back, and adding two zeros at the end of the call back number for code purposes. After checking with his police department and learning the details of the theft from Morton's, at approximately 6:00 p.m. Williams called the beeper number and left his phone number and the code. Within two or three minutes a male who gave his name as "Hensley" returned the call and told Williams that "Hensley," driving a gray Monte Carlo, would meet him in the parking lot of the Azalea Mall at 8:30 p.m. that night.

Special police forces were placed at the Azalea Mall to intercept "Hensley" after the purchase was made, as well as to serve as a "back-up" for Williams. Williams made contact with "Hensley," who drove up in a Monte Carlo with appellant seated in the passenger seat. Williams had been given $2,100 by police officials to make the buy, all of which had been photostated for identification purposes before he received it. When "Hensley" approached Williams' car, Williams told "Hensley" he would deal only with one of them. "Hensley" directed appellant to drive the Monte Carlo behind Williams' car and wait. "Hensley" then went to the Monte Carlo, reached down toward the floorboard, picked up a blue-gray sports bag which contained the stolen watches and

brought it to Williams, where they negotiated a sale of seventy-nine watches for $2,000. Among the items purchased were Nicolet watches, which were sold exclusively by Morton's. When the sale was consummated "Hensley" returned to his car and Williams drove off, giving a prearranged signal to the waiting police who then closed in on the Monte Carlo when it started to move away. Seeing the police cars, appellant and "Hensley" abandoned their vehicle and attempted on foot to evade the police. An examination of the abandoned Monte Carlo revealed a beeper over the sun visor and the gym bag which had contained the stolen jewelry. The gym bag was found on the floorboard in front of the seat on which appellant was sitting as they drove off after the sale. Williams made an in-court demonstration proving that the beeper number was the one he had called. Officer Russell ran after appellant, who fled into nearby woods by way of a wide path. Appellant fell once in the path but arose and continued to flee; however, after falling again he was apprehended and arrested at approximately 8:40 p.m. When returning from the place of arrest one of the officers found a loaded gun in the pathway at the place where appellant had first fallen. After being arrested, appellant three times falsely stated his name to the police. While searching appellant, the police found $1,000 (approximately one-half of the sale price for the stolen items) in one of his pockets. The money found on appellant was identified as the money given to Williams to purchase the stolen jewelry. The remaining purchase money was found in the area where codefendant, later identified as Yves Henley and as the driver of the Monte Carlo, was arrested. In addition to the money found in appellant's pocket, seven gold chains, identified as the same brand[1] as those stolen from Morton's, were removed from around appellant's neck and one was removed from his mouth. Twenty watches and various items of jewelry, including a display container, were in the gym bag found in the Monte Carlo. Of the one hundred watches which had been stolen, seventy-nine were purchased by Williams and twenty were found in the bag, all of which were identified as having been taken from Morton's at the time of the break-in. There was no evidence presented to contradict any of the foregoing evidence, and all of the events described above occurred in less than a twenty-four

---

[1] Strict proof of the identity of the stolen articles is not required where the possession is unexplained and recent. See Cook v. Commonwealth, 214 Va. 686, 687-88, 204 S.E.2d 252, 253 (1974).

hour period.

■ "[P]ossession of goods recently stolen is *prima facie* evidence of guilt of the crime of larceny, and throws upon the accused the burden of accounting for that possession." *Fout v. Commonwealth*, 199 Va. 184, 190-91, 98 S.E.2d 817, 821-22 (1957). No such account is disclosed by this record.

■ Guilt of breaking and entering a building may be established by circumstantial evidence; eyewitnesses are not required. *Id.* at 189, 98 S.E.2d at 821. Appellant does not dispute that there was proof of a *breaking and entering* at Morton's and that goods were stolen from the store. The evidence supports an inference that both the breaking and entering and the larceny were committed at the same time, by the same person, as a part of the same criminal enterprise. When combined with proof that the stolen property was found in appellant's possession soon thereafter, a *prima facie* case of appellant's guilt of breaking and entering was established. *Guynn v. Commonwealth*, 220 Va. 478, 480, 259 S.E.2d 822, 823-24 (1979). No evidence was presented by appellant to rebut the *prima facie* case created by the Commonwealth.

Over appellant's objection, the trial court admitted into evidence the loaded gun which was found at the place where appellant fell while attempting to avoid arrest. At trial, the ground for appellant's objection to the gun's admissibility was stated to be that "there is nothing to connect this man [appellant] with the pistol . . . they are not going to be able to tie this gun, the gun, to this man . . . it is highly prejudicial to introduce it . . . it makes him look like a criminal[2] . . . I don't think we tied it to him." Our examination of the record discloses that appellant fell in a path while being chased by the police who intended to and did arrest him. Where the appellant had fallen the officers found the gun loaded with five rounds. The evidence is sufficient to permit the jury to find that the gun was connected to appellant.

■ Appellant next argues that it was "highly prejudicial" to permit the loaded gun into evidence. In all cases based on circumstantial evidence of guilt the *conduct* of the accused is an impor-

---

[2] In oral argument before us counsel for appellant argued that evidence of the loaded gun was inadmissible because it was "evidence of other crimes." Neither the record nor counsel discloses what other crimes are disclosed by that evidence.

tant factor in the estimate of the weight of circumstances which point to his guilt. *Harris v. Commonwealth*, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966); *see also Bowie v. Commonwealth*, 184 Va. 381, 391, 35 S.E.2d 345, 349-50 (1945). In such cases the Virginia Supreme Court has said that relevant evidence is any evidence "which may throw light upon the matter being investigated, and while a single circumstance, standing alone, may appear to be entirely immaterial or irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Peoples v. Commonwealth*, 147 Va. 692, 704, 137 S.E. 603, 606 (1927).

In *Bowie*, the Supreme Court of Virginia reaffirmed that evidence of flight may be considered as evidence of guilt along with other pertinent facts and circumstances. 184 Va. at 392, 35 S.E.2d at 350. The flight need not immediately follow the commission of the crime since the defendant may be suspected and become aware of the suspicion at a later date. *Davis v. State*, 237 Md. 97, 105-06, 205 A.2d 254, 259 (1964), *cert. denied*, 382 U.S. 945 (1965); 1 *Wharton's Criminal Evidence* § 211 (13th ed. 1972). The acts or conduct of the defendant after the crime, which are not elements of the crimes charged, are admissible because they may tend to show a "consciousness of guilt." *Jenkins v. Commonwealth*, 132 Va. 692, 696, 111 S.E. 101, 102 (1922); *see also* 20 Am. Jur. *Evidence* § 291. In such cases, the defendant has no right to sanitize the evidence. *See State v. Lambert*, 104 Me. 394, 71 A. 1092 (1908). In *Lambert*, defendant was indicted for larceny and when arrested was found to be armed with a loaded pistol. The Court stated:

There was no apparent occasion for any legitimate use of the revolver by the defendant that day, and, if it was not loaded and carried for the purpose of aiding him to escape . . . the defendant had full opportunity to explain for what purpose he did have it. "It is to-day universally conceded," says Mr. Wigmore, "that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *The possession of the tools suitable for effecting an escape is also deemed an incriminating fact which may go to the jury.*

*Id.* at 397, 71 A. at 1093 (emphasis added); *State v. Davis*, 535 S.W.2d 259, 260 (Mo. App. 1976); *see also Rodgers v. State*, 468 S.W.2d 438, 440 (Tex. Crim. App. 1971). At common law, larceny was deemed to be a "continuing offense" and "is being committed every moment of the time during which the thief deprives the owner of the stolen property or its possession." *Dunlavey v. Commonwealth*, 184 Va. 521, 525, 35 S.E.2d 763, 765 (1945). Thus, the weapon was possessed by appellant at a time of the commission of larceny and, in this case, was surely a tool intended to be used if deemed necessary by the thief to continue the larceny and/or perfect his escape.

Appellant further argues that the admission of the gun may have caused the jury to set an excessive punishment. He was sentenced to fifteen years on each charge, five years less on each charge than he could have received. The evidence disclosed that appellant used a beeper system to make contact with prospective purchasers of stolen property and indicates a well organized and sophisticated criminal operation. Nothing in this record suggests that the sentence was excessive nor is there evidence to indicate that it was likely that a lesser sentence would have been imposed if the loaded gun had not been introduced. Appellant offered no evidence in mitigation or excuse for his acts, and the presumption of correctness of the trial court's decision has not been rebutted. We find no cause to disturb the jury's verdict.

Accordingly, we affirm.

*Affirmed.*

Cole, J., Coleman, J., Duff, J., Moon, J., and Willis, J., concurred.

Benton, J., with whom Koontz, C.J., Barrow, J., and Keenan, J., join, dissenting.

The Commonwealth established sufficient facts and circumstances which, if believed by the jury, might have supported the burglary and larceny convictions. However, for no legitimate reason apparent on this record, the Commonwealth offered and was allowed to place before the jury a gun that had no proven relationship to those offenses. The gun was found in woods near the place where Mayfield B. Hope fell while fleeing from a police officer

nearly twenty-four hours after the burglary. Hope's companion had just sold some of the stolen goods to an undercover officer. No evidence connects the gun to Hope or to the commission of the burglary and larceny offenses. I believe that evidence concerning the gun was inadmissible, was prejudicial, and constitutes grounds for reversing the conviction.

The Commonwealth's theory of prosecution was based upon a presumption of theft arising from Hope's unexplained possession of recently stolen property. The Commonwealth made no showing of the relevance of the gun to proof of the larceny or burglary. In admitting the evidence "for whatever [the jurors] want to determine," the trial judge made no determination that the gun was relevant to the charges. Our jurisprudence establishes evidentiary limits beyond which the Commonwealth may not proceed in attempting to obtain a conviction.

> Evidence which has no tendency to prove guilt, but only serves to prejudice an accused, should be excluded on the ground of lack of relevancy. For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto. Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence.

*Bunting v. Commonwealth*, 208 Va. 309, 314, 157 S.E.2d 204, 208 (1967). Not only did the Commonwealth fail to establish that Hope possessed the gun, but the Commonwealth's own evidence established that the gun had "no causal relation or logical and natural connection with the guilt of [Hope] and [was] irrelevant and immaterial to the charges against him." *Id.*

The record established that as Officer Russell pursued Hope on foot into the woods, Officer Belviso drove his vehicle to the edge of the woods, got out, and also began to pursue Hope. At some point, Hope tripped and fell but got up and continued to run. Russell and Hope eventually fell side by side in the woods and Hope was arrested. According to Belviso, after Hope had been arrested and was being led back, Belviso saw a loaded .38 caliber revolver "laying on the . . . path where [Hope] had fallen the first time."

When the Commonwealth offered testimony concerning the gun, over Hope's objection, no explanation of its relevance was given to the trial judge. Moreover, the trial judge's ruling did not address the basis upon which the evidence was admitted. The majority, however, concludes that the gun "may tend to show a 'consciousness of guilt.'" Presumably, the majority believes that the jury could have inferred from the facts both that Hope had the gun on his person as he ran through the woods and that Hope dropped or discarded the gun when he fell. From those inferences the majority suggests that the jury could further have inferred Hope's consciousness of guilt. I disagree with this reasoning. Basing an inference upon other inferences is an impermissible mode of proof which cannot be used to support the conclusion that the majority urges. In Virginia, "[i]nferences must be based on facts, not other inferences." *Doughty v. Commonwealth*, 204 Va. 240, 244, 129 S.E.2d 664, 666 (1963).

Once the gun was admitted in evidence, the Commonwealth proved that the gun was "a six shot [and] was loaded." The only probative value of evidence that a loaded gun was found at a place in the field where Hope fell was to create an inference in the minds of the jurors that Hope possessed a concealed weapon on his person and was therefore a dangerous criminal. It has long been established that "evidence that the defendant has committed an unrelated crime is inadmissible against him." *King v. Commonwealth*, 217 Va. 912, 914, 234 S.E.2d 67, 69 (1977) (In a prosecution for attempted rape, evidence that the defendant was planning to use cocaine was inadmissible). Where "[t]he probative value, if any, of . . . evidence . . . is far outweighed by the prejudicial nature of such evidence," the evidence must be excluded. *Cumbee v. Commonwealth*, 219 Va. 1132, 1138, 254 S.E.2d 112, 116 (1979).

The evidence in question served the dual purpose of allowing the Commonwealth to prove at once criminal propensity and bad character. Just as "[a] defendant introducing mitigating evidence at the guilt phase of a trial may be found to have put his character in issue," *Duncan v. Commonwealth*, 2 Va. App. 342, 346, 343 S.E.2d 392, 394 (1986), the Commonwealth's introduction of aggravating evidence likewise put Hope's character in issue. However, the Commonwealth is not permitted to put in issue a defendant's character unless the defendant first makes his character an

issue. *Weimer v. Commonwealth*, 5 Va. App. 47, 52, 360 S.E.2d 381, 383 (1987); *Fields v. Commonwealth*, 2 Va. App. 300, 305-06, 343 S.E.2d 379, 382 (1986). Hope did not do so in this trial.

It also is abundantly clear from the record that the Commonwealth used the loaded gun to urge the jury to levy a stiff sentence on Hope. In closing argument, the Commonwealth's attorney argued to the jury that this was not a "minor" case but, rather, was "a different kind of case" because Hope possessed a loaded firearm. The use of the gun in this fashion was a means of arguing bad character and aggravation of punishment. Evidence offered to prove an aggravating factor unrelated to proof of the elements of the charged offense is inadmissible prior to a determination of guilt. *See McClain v. Commonwealth*, 189 Va. 847, 861, 55 S.E.2d 49, 56 (1949); *see also Peterson v. Commonwealth*, 225 Va. 289, 298, 302 S.E.2d 520, 526 (by statute evidence in aggravation is admissible in capital murder cases but only in the penalty stage), *cert. denied*, 464 U.S. 865 (1983). Hope was entitled to "be adjudged guilty only on evidence admissible on that issue." *McClain*, 189 Va. at 861, 55 S.E.2d at 56; *cf. Duncan*, 2 Va. App. at 346-47, 343 S.E.2d at 395 (evidence of mitigating factors is "relevant only to the issue of punishment;" therefore, it is not appropriate "evidence before the jury in mitigation of punishment").

The gun was collateral to the issue of guilt and was not probative of any offense for which the defendant was being tried. "[T]he evidence elicited by the Commonwealth was prejudicial in that the implications it raised tended to divert the minds of the jurors from the issues before them." *Lewis v. Commonwealth*, 225 Va. 497, 501, 303 S.E.2d 890, 892 (1983); *see also Boggs v. Commonwealth*, 199 Va. 478, 486, 100 S.E.2d 766, 772 (1957). "[T]he error in admitting the evidence could have affected the [guilt] verdict [as well as the sentence], thereby denying [Hope] the fair and impartial trial to which he was entitled." *King*, 217 Va. at 915, 234 S.E.2d at 69. Accordingly, I would reverse and remand for a new trial.