COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Annunziata
Argued at Richmond, Virginia


STEVEN ARNELL HAIRSTON

                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 3049-07-3                   JUDGE ROSEMARIE ANNUNZIATA
                                                          DECEMBER 23, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

S. Jane Chittom, Appellate Defender (Office of the Appellate
Defender, on briefs), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Steven Arnell Hairston appeals his conviction for statutory burglary in violation of Code

§ 18.2-91.  Appellant concedes that "while there is evidence to support a conclusion that [he]

entered Matthew Mann[s'] house [on July 6, 2007], there is no evidence to support the conclusion

that he did so with the intent to commit larceny," as required for a conviction under Code

§ 18.2-91.[1]

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Based upon our review of appellant's motion to strike and closing argument in which he raised the issue of sufficiency of the evidence to prove an intent to commit larceny and the Commonwealth's argument in response as contained in the trial transcript, we reject the Commonwealth's contention that appellant did not preserve his argument for appellate review.

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence proved that on July 6, 2007, Josh Randolph Baker saw appellant walk up his driveway and then walk "right to [Manns'] house." Manns had secured and boarded up his front door after some earlier break-ins had occurred.[2] Baker is Manns' uncle and lives next door. Baker knew Manns was not home at that time and, as a result, he went to Manns' home to investigate. He found the front door open and saw appellant inside the house coming toward the front door with "something white" in his hand. When Baker yelled to appellant to come out, appellant backed up and fled. Because appellant "backed up too quick," Baker could not identify the white object he saw in appellant's hand. Nor did Baker see how appellant exited the house or where he went after he left. However, the back door was open.

The sheriff's office called Manns on July 6, 2007, and asked him to come home, "because [his] door had been kicked open again . . . ." When Manns arrived, the police were at his house, and he found it "wide open" and "the door jamb was busted out." Manns testified that "there was nothing taken from the house that time that I could find." He denied giving appellant permission to enter his home on July 6, 2007.

Appellant testified he walked by Manns' house on July 6, but denied he entered it or that he kicked open the door. Instead, he stated that he continued walking past the house of a woman named Cynthia Campbell and then got a ride with an individual named Jonathon Jones to the house of Anthony Prunty. Appellant acknowledged seeing Baker in his yard talking on his cell phone. Appellant had prior felony convictions, which he numbered "about 20."

---

[2] Manns testified that about a week before July 6, 2007, the door to his home had been kicked in. After that incident, he had boarded up the door, with a board held in place by locks, ten-penny nails, and three-inch screws. He used the back door while he waited for an insurance payment to fix the front door. Manns confirmed that the boarded-up front door was securely closed on July 6, 2007.

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Thus, we do not "substitute our judgment for that of the trier of fact." "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

Kelly v. Commonwealth, 41 Va. App. 250, 257-58, 584 S.E.2d 444, 447 (2003) (*en banc*)

(citations omitted).

The relevant provisions of Code § 18.2-91 state that a person is guilty of statutory burglary if that person breaks into and enters any building permanently affixed to realty with the intent to commit larceny. When a statute, such as Code § 18.2-91, "makes an offense consist of an act combined with a particular *intent*, such *intent* is as necessary to be proved as the act itself, and it is necessary for the intent to be established as a matter of fact before a conviction can be had." "Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be shown by a person's conduct or by his statements."

Vincent v. Commonwealth, ___ Va. ___, ___, ___ S.E.2d ___, ___ (Oct. 31, 2008) (emphasis in

original) (citations omitted).

[A] trier of fact may not reasonably infer the specific intent to commit larceny merely from the absence of evidence showing a different intent. Instead, as we stated in both Ridley and Tompkins, the specific intent with which an unlawful entry is made "may be inferred from the surrounding facts and circumstances."

Id. at ___, ___ S.E.2d at ___ (quoting Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d

313, 314 (1979); Tompkins v. Commonwealth, 212 Va. 460, 461, 184 S.E.2d 767, 768 (1971)).

Contrary to appellant's contention, nothing in this record shows the trial judge, as fact

finder, impermissibly found that appellant had the specific intent to commit larceny based upon

an inference derived solely from evidence of appellant's unauthorized entry into Manns' home. In this case, the evidence and reasonable inferences flowing from that evidence, viewed in the light most favorable to the Commonwealth, proved that appellant forcibly broke and entered Manns' home by breaking through the boarded-up front door and the door jamb and that he walked inside the house, where Baker saw him with "something white" in his hand. When seen by Baker, appellant fled and later denied entering the home, giving rise to an inference of guilt. See Hope v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833 (1990) (*en banc*) ("[E]vidence of flight may be considered as evidence of guilt along with other pertinent facts and circumstances."). Even though Manns could not specifically identify anything missing from his home and Baker could not identify the white object in appellant's hand, a rational fact finder could reasonably infer that appellant held an item in his hand that he intended to steal from Manns' home. These surrounding facts and circumstances allowed a rational fact finder to conclude beyond a reasonable doubt that appellant broke and entered Manns' home with the intent to commit larceny.

For these reasons, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that appellant possessed the specific intent to commit larceny when he unlawfully broke into and entered Manns' home. Accordingly, we affirm the trial court's decision.

Affirmed.