UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Alston
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.        Record No. 0043-15-4

DAVID PIJOR

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
MAY 26, 2015

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Patrick M. Blanch (Todd M. Zinicola; Elders, Zinicola & Blanch,
PLLC, on brief), for appellee.


The Commonwealth appeals the ruling of the Circuit Court of Fairfax County (the "trial

court") granting David Pijor's ("Pijor") motion to dismiss the September 15, 2014 indictment

charging him with felony larceny of a dog in violation of Code § 18.2-97.  The Commonwealth's

single assignment of error alleges the trial court erred in holding that the continuing nature of a

larceny required dismissal of the indictment based on the doctrine of double jeopardy.

Therefore, the sole issue before this Court is whether a single larceny, a continuous offense at

common law, can be subject to multiple prosecutions.

I.  BACKGROUND

In an appeal brought by the Commonwealth pursuant to Code § 19.2-398, we view the

historical facts that provide the context of our analysis in the light most favorable to the

prevailing party below, Pijor, and we grant him all reasonable inferences fairly deducible from

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

that evidence. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991) (citation omitted). "We will not reverse the trial judge's decision unless it is plainly wrong." Id. Viewed in that light, the record reflects that Pijor and Kristy Gooch ("Gooch") were involved in a romantic relationship for several years prior to the events in this case. After failing to hear from Gooch for thirty-six hours, Pijor went to her family's residence on September 6, 2013. Pijor rang the doorbell, knocked on the door, and called the home phone and Gooch's mother's cell phone, receiving no answer. After waiting approximately ten minutes, Pijor let himself into the home using a spare key hidden outside. Pijor was immediately met by Gooch's dog. The dog followed Pijor as he walked through the house looking for Gooch. Gooch's mother appeared and told Pijor to leave. The dog followed Pijor out the side door of the home. Pijor instructed the dog to stay and proceeded to leave the yard before the dog could follow him. When Gooch's mother came outside the home shortly thereafter, Pijor and the dog were gone.

Pijor was first indicted on December 16, 2013 for felony larceny of a dog and unlawful entry on or about September 6, 2013. After a jury trial, Pijor was acquitted of both charges. On April 29, 2014, the Fairfax County Police stopped Pijor's vehicle and found Gooch's missing dog with Pijor. On September 15, 2014, Pijor was again indicted for felony larceny of the same dog on or about April 29, 2014. It was uncontested that the dog had been missing from his owner, Gooch, for the entire period from September 6, 2013 to April 29, 2014. After a hearing, the trial court granted Pijor's motion to dismiss the second indictment on the grounds of double jeopardy.

## II. ANALYSIS

In this appeal, the burden is upon the Commonwealth, as the appellant, to show that the trial court's ruling constituted reversible error. See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). "In reviewing a double jeopardy claim, or a claim based on

statutory interpretation, this Court shall conduct a *de novo* review." Davis v. Commonwealth, 57 Va. App. 446, 455, 703 S.E.2d 259, 263 (2011).

The Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Id. In this case, we are only concerned with the first of those protections. However, the clause in the Fifth Amendment which prohibits what we generically refer to as "double jeopardy," "is not properly invoked to bar a second prosecution unless the 'same offen[s]e' is involved in both the first and the second trials." United States v. Ewell, 383 U.S. 116, 124 (1966).[1] It is undisputed that Pijor was placed in jeopardy at his February 4, 2014 trial for felony larceny of Gooch's dog, which resulted in an acquittal. Therefore, the only issue before this Court is whether the charge of felony larceny of the same dog in the second indictment constituted the same offense, and is therefore prohibited by the Double Jeopardy Clause.

Code § 18.2-97 provides that any person who is guilty of the larceny of any dog is guilty of a felony. At common law, larceny is "the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently." Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763-64 (2001). The first indictment dated December 16, 2013 states, "[o]n or about the 6th day of September, 2013, in the County of Fairfax, David Stanley James Pijor did feloniously take, steal and carry away a dog, to

---

[1] Protections against double jeopardy provided under the United States Constitution are "identical with those embodied in Article I, section 8 of Virginia's Constitution." Bennefield v. Commonwealth, 21 Va. App. 729, 739, 467 S.E.2d 306, 311 (1996). Accordingly, Virginia courts have "consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution." Id. at 739-40, 467 S.E.2d at 311.

wit: a Gold Retriever, belonging to Kristy Gooch." The second indictment dated September 15, 2014 states, "[o]n or about the 29th day of April, 2014, in the County of Fairfax, David Stanley James Pijor did feloniously take, steal and carry away a dog belonging to Kristy Gooch." Both indictments cite Code § 18.2-97 as the basis for the larceny charges. Pijor was being charged with the larceny of the same dog under the same statute. The only difference in the indictments is the alleged date of the offense.

To determine if the trial court erred in dismissing the subsequent indictment, we must determine if the Commonwealth is correct in either of its alternative arguments that: (1) the nature of the offense of larceny is such that each day that a thief remains in possession of stolen property to the owner's detriment constitutes a separate offense, or (2) the specific intent of the legislature in enacting Code § 18.2-97 was to permit multiple prosecutions for the same offense.

As the trial court correctly noted in its letter opinion, while Blockburger v. United States, 284 U.S. 299 (1932), primarily focuses on whether two offenses are the same when a defendant is being prosecuted for multiple offenses in a single trial, the rationale underlying Blockburger is still instructive in determining whether a subsequent prosecution for the same charge is similarly barred. "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . If the latter, there can be but one penalty." Id. at 302 (citation omitted).

The United States Supreme Court applied this test in Brown v. Ohio, 432 U.S. 161 (1977). In Brown, the defendant stole a car in one county and was arrested in another county nine days later for joyriding. The Court held:

> After correctly holding that joyriding and auto theft are the same offense under the Double Jeopardy Clause, the Ohio Court of Appeals nevertheless concluded that [the defendant] could be convicted of both crimes because the charges against him focused on different parts of his 9-day joyride. We hold a different view. *The Double Jeopardy Clause is not such a fragile guarantee that*

*prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.* The applicable Ohio statutes, as written and as construed in this case, make the theft and operation of a single car a single offense. Although the [different jurisdictions] may have had different perspectives on [the defendant's] offense, it was still only one offense under Ohio law. *Accordingly, the specification of different dates in the two charges on which [the defendant] was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments.*

Id. at 169-70 (emphasis added). In Virginia, larceny is defined by the common law as a single continuing offense. See Hope v. Commonwealth, 10 Va. App. 381, 387, 392 S.E.2d 830, 834 (1990) (holding that at common law, "larceny was deemed to be a 'continuing offense' and 'is being committed every moment of the time during which the thief deprives the owner of the stolen property or its possession'" (quoting Dunlavey v. Commonwealth, 184 Va. 521, 525, 35 S.E.2d 763, 765 (1945))). It follows that the larceny of a single dog is the same offense, even though the retention of the dog may be ongoing.

In accordance with the common law, the applicable statute in this case for felony larceny of an animal makes the taking and retention of a dog a single, though continuing, offense. See Code § 18.2-97. Consistent with the reasoning of Blockburger and Brown, the trial court noted that "there was only one dog and that dog had been missing since at least September 6, 2013." The trial court then properly concluded that "[t]he theft of the dog [was] a single and continuing episode" from September 6, 2013 to April 29, 2014. Because the alleged larceny in this case was a single continuous offense which comprises a single "course of action," it follows that there "can be but one penalty."

The Commonwealth agrees that larceny is a continuing offense, but the prosecutor argued in the trial court and the Attorney General now argues on appeal that the continuing nature of the offense of larceny supports its position that multiple prosecutions are permitted. On brief, the Commonwealth specifically argues that, "Pijor committed a new larcenous act against [Gooch],

- 5 -

on April 29, 2014, by possessing the dog that he knew rightfully belonged to her and keeping the dog from her." We disagree. First, possessing a dog Pijor knows rightfully belonged to Gooch does not prove a *new* larceny offense. Merely possessing the stolen property fails to establish the essential elements of a separate larceny—a *new* wrongful or fraudulent taking of the dog with the intent to permanently deprive the owner of the dog. It was uncontested that the dog had been missing from his owner, Gooch, for the entire period from September 6, 2013 to April 29, 2014. Simply because the indictments alleged different dates of the offense does not change the fact that the second indictment charged Pijor with the same offense as the first indictment, the taking of Gooch's dog with the intent to permanently deprive her of it. Although the fact that Pijor had possession of the stolen dog almost eight months after the theft may be evidence that he intended to permanently deprive Gooch of the dog, or support an inference by a factfinder that he was the thief, it does not follow that the mere difference in dates that the dog was alleged to have been taken equates to a separate offense. Accordingly, we agree with the trial court's conclusion that the taking and subsequent retention of the dog was a single course of criminal conduct.

The Commonwealth relies on <u>Dunlavey</u> for the proposition that when property has been feloniously taken, "every act of removal or change of possession by the thief constitutes a new taking or asportation; and, as the right of possession, as well as the right of property, continues in the owner, every such act is a new violation of the owner's right of property and possession." 184 Va. at 527, 25 S.E.2d at 766. However, as Pijor and the trial court correctly noted, <u>Dunlavey</u> was decided on venue grounds and did not authorize multiple prosecutions of a single defendant in the various jurisdictions where the continuing offense occurred. Instead, the holding of <u>Dunlavey</u> permits a third party to be prosecuted for larceny if that third party assists in the continuing asportation of stolen property, as long as the property is in the possession of the original thief. <u>Id.</u>

- 6 -

In Doane v. Commonwealth, 218 Va. 500, 502, 237 S.E.2d 797, 798 (1977), the Commonwealth made a similar argument relating to the continuous nature of larceny, relying on the exact quote from Dunlavey cited above. In Doane, the Commonwealth argued that the defendant, who stole a vehicle in Richmond and collided with a vehicle several hundred miles away the next day, continued to possess and use the car he had stolen, and was therefore "still in the prosecution of a felonious act [larceny] at the time of the auto accident." Id. at 501, 237 S.E.2d at 797. Our Supreme Court rejected this argument and put to rest any confusion that might result from its choice of words in Dunlavey, explaining:

> The concept of larceny as a continuing offense is a fiction of the common law, a fiction which allows a thief who steals within a jurisdiction to be tried for the offense in any venue of that jurisdiction to which he transports, or wherein he possesses, the fruits of the larceny. *This fiction, however, does not extend to create jurisdiction where the larceny occurs without the jurisdiction and the fruits of the larceny are transported to or possessed within the jurisdiction. While we continue to recognize this fiction in support of venue, we decline to extend it, as the Commonwealth would have us do.*

Id. at 502, 237 S.E.2d at 798 (emphasis added). Accordingly, our Supreme Court clarified that while the continuing nature of a larceny may expand the *number of jurisdictions* in which a thief may be prosecuted, its continuing nature does not expand the *number of prosecutions* that may occur for that offense. Thus, we also decline to extend the "fiction" of larceny as a continuing offense beyond the support of an expansion of venue as discussed in Dunlavey and Doane.

The Commonwealth next relies on Baker v. Commonwealth, 284 Va. 572, 733 S.E.2d 642 (2012), to argue that the gravamen of the offense demonstrates the legislature's intent to make each separate incident of possession of stolen goods a new larceny. We also find this argument unpersuasive. As a general principle, under our tripartite system of government, the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts of the judicial branch and prosecutors in the executive branch from encroaching into matters reserved

exclusively to the legislative branch of government. "The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." Brown, 432 U.S. at 165. Thus, in defining conduct that may constitute a crime, the General Assembly is free to frame the elements of a crime in a manner that makes it clear that each day that particular conduct occurs may constitute a separate offense.

In Baker, the defendant was observed in possession of the same handgun on three separate days, which led to his conviction of three separate counts of possession of a firearm by a felon in violation of Code § 18.2-308(A). 284 Va. at 574-75, 733 S.E.2d at 644. The Supreme Court of Virginia affirmed the three convictions holding that the language of the statute demonstrated that the General Assembly's goal to punish a convicted felon for possessing a firearm extended to the prevention of the heightened danger each new instance of possession creates. Id. at 577-78, 733 S.E.2d at 645. Contrary to the offense charged in Baker, which is specifically defined by statute and contains language indicating the General Assembly's intent for each instance of possession to be punished separately, Pijor was charged with felony larceny of a dog, which is defined by the common law as a single continuing offense. See Hope, 10 Va. App. at 387, 392 S.E.2d at 834. The General Assembly has not altered the common law treatment of larceny of an animal as a continuing offense in Virginia as it has with respect to other statutory offenses. [2] See, e.g., Code § 18.2-308(A) (which was discussed in Baker); Tharrington v. Commonwealth, 58 Va. App. 704, 710, 715 S.E.2d 388, 391 (2011) (holding that the language of Code § 18.2-108.01(C) stating "[a] violation of this section constitutes a separate

_____

[2] See Code § 1-200 ("The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly.").

and distinct offense" expresses the legislative intent to authorize multiple punishments for a single course of conduct involving larceny and the intent to distribute under Code §§ 18.2-108.01and 18.2-95). Thus, the Double Jeopardy Clauses of both the United States and Virginia Constitutions mandate the dismissal of Pijor's second indictment.[3]

The fact that the Commonwealth now possesses what amounts to after-discovered evidence showing Pijor had the missing dog in his possession does not alter the well-established rule that the Commonwealth is not entitled to more than one opportunity to prosecute for a single offense. See Tibbs v. Florida, 457 U.S. 31, 41 (1982) (noting that the Double Jeopardy Clause "prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction"); Green v. United States, 355 U.S. 184, 187-88 (1957) (discussing the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal, as well as enhancing the possibility that even though innocent he may be found guilty).

Because we conclude that the trial court's dismissal of the second indictment on double jeopardy grounds was proper, we need not rule on Pijor's alternative arguments that the trial court's decision should also be affirmed based on collateral estoppel, *res judicata*, and *autrefois acquit*.[4]

---

[3] Pijor's alternative argument that the second indictment is barred pursuant to Grady v. Corbin, 495 U.S. 508, 521 (1990), is without merit. The United States Supreme Court emphatically overruled the "same conduct" test of Grady, concluding its rule "[wa]s wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." United States v. Dixon, 509 U.S. 688, 704 (1993).

[4] It is well established that the legal doctrines of collateral estoppel, *res judicata*, and *autrefois acquit* are subsumed by the Double Jeopardy Clause of the Fifth Amendment. See Ashe v. Swenson, 397 U.S. 436, 445 (1970) (holding that the collateral estoppel rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy); Crist v. Bretz, 437 U.S. 28, 33 (1978) (noting that a primary purpose of the Fifth Amendment guarantee against

## III. CONCLUSION

For the reasons stated, we hold that the trial court was correct in holding that the Double Jeopardy Clause mandated the dismissal of Pijor's second indictment. Ironically, as the trial court noted, "despite the Commonwealth's efforts to assert the continuing offense nature of a larceny as grounds to permit the prosecution to go forward, it is that principle that actually requires [this Court] to dismiss the indictment on grounds of double jeopardy." Accordingly, we affirm the trial court's decision to dismiss the second indictment.

Affirmed.

---

double jeopardy derived from English common law and is akin to the purpose served by the doctrines of *res judicata* and collateral estoppel—to preserve the finality of judgments); United States v. Scott, 437 U.S. 82, 87 (1978) (explaining that *autrefois acquit*, *autrefois convict*, and pardon constituted the foundation for the Fifth Amendment's Double Jeopardy Clause).